**Mark FELDSTEIN, Plaintiff,**

v.

**The CHRISTIAN SCIENCE MONITOR; the First Church of Christ, Scientist; and the Christian Science Publishing Society, Defendants.**

Civ. A. No. 80–0103–MA.

United States District Court, D. Massachusetts.

Jan. 31, 1983.

Jeanne Baker, Baker & Fine, Alan M. Dershowitz, Cambridge, Mass., for plaintiff.

Douglas F. Seaver, Stephen A. Moore, Gaston Snow & Ely Bartlett, Boston, Mass., June Y. Kilmarx, The First Church of Christ, Scientist in Boston, Boston, Mass., for defendants.

## MEMORANDUM AND ORDER

MAZZONE, District Judge.

This matter arises from a suit brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, by the plaintiff, Mark Feldstein, against the defendants, the Christian Science Monitor (the Monitor), the First Church of Christ, Scientist (the Church), and the Christian Science Publishing Society (the Publishing Society). The matter is before the Court on defendants' motion for summary judgment. The defendants bring their motion on several grounds: first, that the Monitor is a religious activity of a religious organization and is therefore entitled to discriminate in its employment practices in favor of co-religionists; second, that as a result of the Monitor's status, this Court is prohibited from inquiring into the presence or absence of a religious character in particular jobs; and finally, that the plaintiff's constitutional challenges to Title VII's treatment of religious activity, and specifically his challenge to the 1972 amendment to section 702 of the Act, 42 U.S.C. § 2000e–1, are without merit.

The undisputed facts in the case are as follows. In January of 1979, Feldstein inquired at the Monitor whether there would be job openings on its news reporting staff upon his graduation from college in June. At that time, Feldstein was a college student interested in pursuing a career in journalism. Upon making his inquiry, Feldstein was instructed to contact the Personnel Department of the Church, where he was asked if he was a member of the Christian Scientist Church. He indicated that he was not, and was informed that he would stand little, if any, chance of becoming employed by the Monitor as a reporter, as only Christian Scientists were hired except in the rare circumstance that no qualified member of the Church was available. Feldstein nevertheless requested and obtained an employment application for a reporter's position.

The employment application, used for positions throughout the Church, contains several questions relating to religious practice, including "Are you ... a member of the Mother Church? A branch Church member? Class taught?"; "Are you free from the use of liquor, tobacco, drugs, medicine?"; "Do you subscribe to the Christian Science periodicals?"; "Are you a daily student of the lesson-sermon?"; and inquiries directed to the applicant's present and past religious affiliation. References are sought from "two Christian Scientists who can comment on your character and your practice of Christian Science." The application closes with the following statement:

> The First Church of Christ, Scientist, may by law apply the test of religious qualifications to its employment policies. Those who meet this requirement and are other-

wise qualified will be hired, promoted and transferred without regard to their race, national origin, sex, color or age.

Feldstein filed his application with the Church in March of 1979, together with a copy of his *curriculum vitae,* letters of recommendation, and a portfolio of newspaper articles that he had written. In April, he was notified by a Church Personnel Representative that his application for employment as a reporter had been rejected. Feldstein has alleged, and the record would seem to support, that his application for employment was not given a full consideration because he was not a Christian Scientist.

Title VII of the Civil Rights Act of 1964 was originally passed as an expression of Congress' laudable intention to eliminate all forms of unjustified discrimination in employment, whether such discrimination be based on race, color, religion, sex, or national origin. This posed a sharp question under the Establishment Clause of the First Amendment to the United States Constitution as to whether Congress could properly regulate the employment practices, and specifically the preference for co-religionists, of religious organizations in matters related to their religious activities. As a result, the original Title VII contained an exemption from the operation of Title VII's proscriptions with respect to the employment of co-religionists to perform work related to the employer's religious activity. Church-affiliated educational institutions were also permitted to hire on the basis of religion.

In 1972, a number of amendments to Title VII were proposed in an effort to alter and expand the existing exemption for religious organizations. The most sweeping of these, introduced by Senator Sam Ervin, proposed to remove religious organizations entirely from the requirements of Title VII. Concern was expressed by Senator Ervin that unless the amendment was passed, an unconstitutional encroachment on the operations of religious organizations by the government would result:

It is impossible to separate the religious and non-religious activities of a religious corporation or religious association or religious educational institution or religious society from its other activities ... Congress does not keep the states—that is, the Government's—hands out of religion by enacting a bill which says that the Government can regulate and control the employment practices of all of the religious groups in this country ... in respect to all of their employees who are not strictly engaged in carrying out the religious affairs of those institutions.

*Legislative History of the Equal Employment Opportunity Act of 1972,* 1212 and 1223 (1972).

Of the two goals initially sought by Senator Ervin and others in the efforts to amend the religious organization exemption in Title VII—permitting religious organizations to discriminate in employment on any grounds, and not merely on the basis of religion; and expanding the exemption to include non-religious as well as religious activities of religious groups—only one was ultimately achieved. Title VII was amended to eliminate the qualification that only religious activities of religious organizations would be exempt from suit based on religious discrimination. Section 2000e–1 provides, as a result of the 1972 amendment:

This subchapter shall not apply ... to a religious corporation, association, educational institution, or society with respect to the employment of individuals of a particular religion to perform work connected with the carrying on by such corporation, association, educational institution or society of its activities.

42 U.S.C. § 2000e–1.

It is clear that the disposition of this matter turns on two key issues: first, whether the Monitor is a religious activity of a religious organization and therefore within the limited exemption provided by Congress in the Civil Rights Act of 1964; and second, if it is not a religious activity of a religious organization, whether the 1972 amendment to Title VII excluding from the scope of Title VII *all* activities of whatever nature of a religious organization is constitutional in light of the requirements of the

Free Exercise and Establishment clauses of the First Amendment.[1]

It is self-evident, as well as uncontested, that the First Church of Christ, Scientist is a religious organization. The status of the Christian Science Publishing Society and of the Monitor is less clear. The plaintiff has argued that the Monitor is a highly regarded and impartial newspaper carrying news stories, articles, features, columns and editorials that are secular in nature and content. The defendants take exception to this characterization of the Monitor and make reference to a number of facts in support of their position that the newspaper is a religious activity of a religious organization and therefore exempt from regulation under Title VII.

According to the uncontroverted affidavit of Michael West, Treasurer of the Christian Science Church and Trustee of the Christian Science Publishing Society, the Monitor is published by the Christian Science Publishing Society, an organ of the Christian Science Church. Both the Publishing Society and the Monitor were founded by Mary Baker Eddy, the founder of the Christian Science faith. The deed of trust of the Publishing Society declares as its purpose "more effectually promoting and extending the religion of Christian Science." According to the by-laws of the Church, it is the "privilege and duty" of every member of the Church to subscribe to periodicals published by the Church, including the Monitor. The Board of Trustees of the Church is directed to "conduct the business of the Christian Science Publishing Society on a strictly Christian basis, for the promotion of the interests of Christian Science." The Board of Directors of the Church is charged with the duty to keep Church periodicals "ably edited and . . . abreast of the times," and elects the editors and manager of the Publishing Society. The by-laws specifically provide that no-one who is not acceptable to the Board shall in any manner be connected with the publishing efforts of the Church. The Board of Directors is responsible for the editorial content of the Monitor and review on a daily basis material appearing in the Monitor.

The Church organization is also involved with the operation of the Monitor in a financial capacity. The by-laws require that the Church provide a "suitable building" for the Monitor's operations. The Church routinely subsidizes the Monitor, which otherwise would run at a significant loss. The Monitor elects, on religious grounds, not to carry advertisements for a number of products, including liquor, tobacco, drugs, medicines, vitamins, and energy stimulants. Advertising policy is formulated in part by Monitor Advertising Information Committees appointed by the Publishing Society on recommendation of local branch churches. Circulation is developed through Christian Science Reading Rooms, and by Church members who act without compensation as circulation representatives.

The plaintiff does not contest that the Christian Science Church is intimately involved with the management, the day-to-day operations and the financial affairs of the Monitor. Paragraph 5 of his complaint states in part:

Defendant First Church of Christ, Scientist is a non-incorporated religious association . . . Control of the Church is vested in a Board of Directors who serve in accordance with terms set out in the *Church Manual.* Pursuant to the *Church Manual, the Board has ultimate authority for and responsibility over the policy and operations of the Monitor.*

\* \* \* \* \* \*

---

1. The plaintiff has noted in his brief in opposition to defendants' motion for summary judgment that "This Court has indicated its intention to defer consideration of the factual issues until after ruling on the constitutionality of the religious exemption to Title VII." Plaintiff's brief, p. 1. However, as the plaintiff must be aware, this Court may only reach those constitutional questions that are properly before it within the factual context of the particular case. Therefore, I must first consider whether the Monitor is a religious activity of a religious organization, and if it is not, then I must consider the constitutional status of the 1972 amendment to section 702 of Title VII.

Defendant Christian Science Publishing Society ... is in the business of publishing and does publish a number of publications including the *Monitor. Control over the daily operations of the Publishing Society, including those daily operations involved in publishing the Monitor, is vested in a Board of Trustees which in turn is directly accountable to the Board of Directors of the Church.*

Plaintiff's Complaint, ¶ 5 (emphasis supplied).

Numerous administrative bodies have considered the status of the Monitor and have determined that it is a religious activity, including the Equal Employment Opportunity Commission (finding it had no jurisdiction over the Monitor), the Internal Revenue Service (finding in 1977 that the Monitor is "merely a department of the First Church of Christ, Scientist" and in 1955 that the Publishing Society is "operated exclusively for religious purposes"), the Department of National Revenue of Canada, the state income tax administrators for Illinois and Massachusetts, and the District of Columbia unemployment compensation board. The District of Columbia board noted:

The question has been raised as to whether or not the operation of the Christian Science Monitor should unclass the Society as an exclusively religious organization. From the information submitted it would appear that the primary purpose of the Monitor is a missionary one to try and interest individuals in Christian Science. In addition, the Monitor carries a religious message each day. It is believed, that as its primary purpose is religious, that any other purpose would appear purely ... ancillary.

Certainly it is true that "not every enterprise cloaking itself in the name of religion can claim the Constitutional protection conferred by that status." *Van Schaick v. Church of Scientology of California, Inc.,* 535 F.Supp. 1125, 1144 (D.Mass.1982) *quoting Founding Church of Scientology v. United States,* 409 F.2d 1146, 1160 (D.C.Cir. 1969). Similarly, not every endeavour that

is affiliated, however tenuously, with a recognized religious body may qualify as a religious activity of that body and come within the scope of the protection from governmental involvement that is afforded by the First Amendment. At the same time, however, a religious activity of a religious organization does not lose that special status merely because it holds some interest for persons not members of the faith, or occupies a position of respect in the secular world at large. Though "the 'wall between church and state' is not absolute," *Members of the Jamestown School Committee, et al. v. Schmidt,* 699 F.2d 1 at 14 (1st Cir. 1983) (Breyer, J. concurring), quoting *Everson v. Board of Education,* 330 U.S. 1, 18, 67 S.Ct. 504, 512, 91 L.Ed. 711 (1947), I am nevertheless unwilling to involve the federal court in what is ultimately an internal administrative matter of a religious activity.

■ While fully crediting the plaintiff's statements that the Monitor holds itself out as an objective and unbiased reporter of world news and events, I cannot ignore the close and significant relationship existing between the Christian Science Church, the Publishing Society and the Monitor; or the declared purpose, both at the time of its founding and until the present, of the Monitor to promulgate and advance the tenets of Christian Science. I find the conclusion inescapable that the Monitor is itself a religious activity of a religious organization, albeit one with a recognized position and an established reputation in the secular community.

■ Having concluded that the Monitor is a religious activity of a religious organization, I find that the constitutionality of that part of section 702 of Title VII, 42 U.S.C. § 2000e–1, that extends the exemption provided for religious organizations to *all* their activities, secular and religious, is simply not here implicated. However, were it to be, I would have grave doubts as to its ability to pass constitutional muster under the Establishment clause of the First Amendment. It is not mandated under the Constitution that Congress prohibit discrim-

ination on grounds of religion in private sector employment. However, having elected to do so in the Civil Rights Act of 1964, the Congress *is* under a constitutional obligation to do so in a way that neither favors nor disfavors secular, private sector enterprises that may be conducted by religious organizations.

The exemption presently afforded by Title VII, 42 U.S.C. § 2000e–1, is a remarkably clumsy accommodation of religious freedom with the compelling interests of the state, providing on the one hand far too broad a shield for the secular activities of religiously affiliated entities with not the remotest claim to first amendment protection while on the other hand permitting intrusions into wholly religious functions.

*Equal Employment Opportunity Commission v. Southwestern Baptist Theological Seminary,* 485 F.Supp. 255, 260 (N.D.Tex. 1980); *see King's Garden, Inc. v. F.C.C.,* 498 F.2d 51, 55–57 (D.C.Cir.), *cert. denied* 419 U.S. 996, 95 S.Ct. 309, 42 L.Ed.2d 269 (1974). It is well established that the expression of a preference for all religions is as constitutionally infirm as a preference for, or a discrimination against, a particular religion. *See Committee for Public Education v. Nyquist,* 413 U.S. 756, 771, 93 S.Ct. 2955, 2964, 37 L.Ed.2d 948 (1973) and cases cited therein. Either would fly in the face of the terms and requirements of the First Amendment.

Because I find that the Monitor is a religious activity of a religious organization, I find that it is permissible for the Monitor to apply a test of religious affiliation to candidates for employment. Therefore, I find as a matter of law that the defendants have not committed an unlawful employment practice under the Civil Rights Act of 1964. The defendants' motion for summary judgment is granted and the complaint is dismissed.

SO ORDERED.