Georgette **SPEER** and the Texas Commission on Human Rights, Appellants,

v.

**PRESBYTERIAN CHILDREN'S HOME & SERVICE AGENCY**, Appellee.

No. 05–90–01211–CV.

Court of Appeals of Texas, Dallas.

Sept. 23, 1991.

Rehearing Denied Feb. 11, 1992.

Cynthia Alksne, Austin, Kenneth H. Molbert, William C. Isbell, Dallas and Brooks Wm. Conover, III, Austin, for appellants.

Stephen F. Fink, Dallas, for appellee.

Before BAKER, LAGARDE and MALONEY, JJ.

## OPINION

MALONEY, Justice.

Georgette Speer and the Texas Commission on Human Rights (Commission) appeal from a judgment rendered for Presbyterian Children's Home & Service Agency (PCHSA). Speer and the Commission sued PCHSA, alleging employment discrimination. The parties tried the case to the court. Speer asserts seven points of error. The Commission asserts eight points of error. Both Speer and the Commission maintain that PCHSA is not a religious corporation. Alternatively, they argue that, even if PCHSA were a religious corporation, it would not qualify for exemption from the prohibition against employment discrimination based on religion. They also contend that the evidence is legally and factually insufficient to support various findings and the judgment, and that certain conclusions of law are erroneous as a matter of law. In a cross point of error, PCHSA argues that the trial court abused its discretion in not awarding it attorney's fees. We affirm the trial court's judgment.

## STATEMENT OF FACTS

PCHSA is a nonprofit Texas corporation affiliated with the Presbyterian Church (U.S.A.). PCHSA provides a variety of child care services to dependent, neglected, and disturbed children. These services include placing children in foster and adoptive homes. On April 29, 1988, Speer interviewed for the position of senior adoption worker at PCHSA. During the interview, Speer stated that she was Jewish. Speer received a rejection letter that stated, "[T]his [a]gency hires only Christians."

Speer filed a claim of unlawful discrimination with the Commission. After investigating her claim, the Commission sued PCHSA for violation of the Texas Commission on Human Rights Act (Act). See TEX. REV.CIV.STAT.ANN. art. 5221k (Vernon 1987

& Supp.1991). Speer also sued PCHSA requesting injunctive relief. The lawsuits were consolidated. The court rendered judgment for PCHSA but did not award attorney's fees to PCHSA.

## STANDARD OF REVIEW

The points of error asserted by Speer and the Commission are directed against the trial court's findings of fact and conclusions of law. Their complaints assert both legal and factual insufficiency of the evidence to support the trial court's findings.

We review factual and legal sufficiency challenges to findings of fact by the same standard we use in reviewing answers to jury questions. *Aerospatiale Helicopter Corp. v. Universal Health Servs., Inc.,* 778 S.W.2d 492, 497 (Tex.App.—Dallas 1989, writ denied), *cert. denied,* — U.S. —, 111 S.Ct. 149, 112 L.Ed.2d 115 (1990).

### a. Legal Insufficiency or No Evidence

■ A "legally insufficient evidence" point is a "no evidence" point presenting a question of law. We consider only the evidence and inferences that tend to support the findings of fact, and disregard all evidence and inferences to the contrary. *Jacobs v. Danny Darby Real Estate, Inc.,* 750 S.W.2d 174, 175 (Tex.1988). We sustain a no evidence point when the record discloses one or more of the following:

(1) a complete absence of evidence of a vital fact,

(2) the only evidence offered to prove a vital fact is barred from consideration by rules of law or evidence,

(3) the evidence offered to prove a vital fact is no more than a mere scintilla, or

(4) the evidence conclusively establishes the opposite of a vital fact.

*Anderson v. City of Seven Points,* 806 S.W.2d 791, 795 n. 3 (Tex.1991); *C & C Partners v. Sun Exploration & Prod. Co.,* 783 S.W.2d 707, 716 (Tex.App.—Dallas 1989, writ denied).

### b. Factual Insufficiency

■ We consider and weigh all of the evidence. We cannot set aside a finding unless it is so contrary to the overwhelming weight of the evidence that it is clearly wrong and unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986) (per curiam).

### c. Conclusions of Law

■ We review challenges to the trial court's conclusions of law as a matter of law, not on sufficiency of the evidence grounds. *Mercer v. Bludworth,* 715 S.W.2d 693, 697 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.). An erroneous conclusion of law is not binding on this Court. *Bantuelle v. Williams,* 667 S.W.2d 810, 818 (Tex.App.—Dallas 1983, writ ref'd n.r.e.) (per curiam). When conclusions of law are attacked on appeal, we have the power and the duty to independently evaluate those conclusions. *MJR Corp. v. B & B Vending Co.,* 760 S.W.2d 4, 10 (Tex. App.—Dallas 1988, writ denied).

## APPLICABLE LAW

When the discriminatory action occurred, the Act stated:

It is an unlawful employment practice for an employer:

(1) to fail or refuse to hire or to discharge an individual or otherwise to discriminate against an individual with respect to compensation or the terms, conditions, or privileges of employment because of race, color, handicap, *religion,* sex, national origin, or age; or

(2) to limit, segregate, or classify an employee or applicant for employment in a way that would deprive or tend to deprive an individual of employment opportunities or otherwise adversely affect the status of an employee because of race, color, handicap, *religion,* sex, national origin, or age.

TEX.REV.CIV.STAT.ANN. art. 5221k, § 5.01 (Vernon 1987) (emphasis added). The Act exempts certain employers from the general prohibition against employment discrimination as follows:

Sec. 5.06: This article does not apply to:

(1) the employment of an individual of a particular religion by a religious corporation, association, or society to perform work connected with the performance of

religious activities by the corporation, association, or society....

TEX.REV.CIV.STAT.ANN. art. 5221k, § 5.06(1) (Vernon 1987). The trial court relied upon this provision [1] in determining that PCHSA did not unlawfully discriminate.

The legislative purpose of the Act was "to provide for the execution of the policies embodied in Title VII of the federal Civil Rights Act of 1964." TEX.REV.CIV.STAT. ANN. art. 5221k, § 1.02(1) (Vernon 1987 & Supp.1991); *see* 42 U.S.C.A. §§ 2000e through 2000e–17 (West 1981). The parties agree, and the trial court concurred, that federal court decisions under Title VII provide guidance in construing the Texas Act. *See Elstner v. Southwestern Bell Tel. Co.,* 659 F.Supp. 1328, 1345 (S.D.Tex.1987), *aff'd,* 863 F.2d 881 (5th Cir.1988). Because Texas has little case law interpreting and applying the Act, we look to federal case law when appropriate.

## IS PCHSA A RELIGIOUS ENTITY

The court concluded as a matter of law that PCHSA is a religious corporation within the meaning of the Act. In her first point of error, Speer asserts that this legal conclusion is erroneous as a matter of law. In her second point of error, Speer complains that the trial court found that PCHSA is a religious corporation "within the meaning of ... section 5.06(1)." The trial court made no such finding of fact.

The Commission's first three points of error also contend that the trial court's legal conclusion is erroneous. In its argument under these points of error, the Commission asserts that the legal conclusion is based upon a finding of fact that is supported by no evidence or insufficient evidence. The Commission does not identify which finding it attacks.

Speer's second point of error complains of a non-existent finding. The Commission's evidentiary complaints in its first three points of error were not preserved by argument under the points in its brief. *Slayton v. White,* 487 S.W.2d 204, 205

(Tex.Civ.App.—Tyler 1972, writ ref'd n.r.e.). Therefore, we review only the trial court's *legal* determination that PCHSA is a religious corporation within the meaning of section 5.06(1) of the Act.

Speer and the Commission contend that the trial court's findings of fact, even if supported by the evidence, do not support the court's legal conclusion that PCHSA is a religious corporation within the meaning of section 5.06(1). Speer and the Commission maintain that PCHSA's *primary* purpose and character are not religious in nature.

### a. Federal Statute

The comparable federal statute provides an exception to the general prohibition of employment discrimination. The federal exception is as follows:

This subchapter shall not apply to ... a religious corporation, association, educational institution, or society with respect to the employment of individuals of a particular religion to·perform work connected with the carrying on by such corporation, association, educational institution, or society of its activities.

42 U.S.C.A. § 2000e–1 (West 1981). Although the federal provision differs from section 5.06(1) in the nature of the work performed by the employee, the provision contains no meaningful difference regarding the employer's status as a religious entity.

### b. Federal Standard

Federal cases provide guidance in determining whether an organization qualifies as a religious entity within the meaning of section 5.06(1). If a corporation's purpose and character are primarily religious, it is a religious entity for section 2000e–1 purposes. *EEOC v. Townley Eng'g & Mfg. Co.,* 859 F.2d 610, 618 (9th Cir.1988), *cert. denied,* 489 U.S. 1077, 109 S.Ct. 1527, 103 L.Ed.2d 832 (1989). The federal courts consider the following factors:

---

**1.** The trial court also relied on the current version of section 5.07(a)(2). TEX.REV.CIV.STAT.ANN. art. 5221k, § 5.07(a)(2) (Vernon Supp.1991).

(1) whether the entity operates for profit or as a nonprofit organization, *Townley*, 859 F.2d at 619;

(2) whether an administrative agency has determined the entity's status, *Feldstein v. Christian Science Moniter*, 555 F.Supp. 974, 978 (D.Mass.1983);

(3) whether the entity's articles of incorporation or other pertinent documents state a religious purpose, *Townley*, 859 F.2d at 619; *Feldstein*, 555 F.Supp. at 977;

(4) whether the entity represents to the church its sectarian nature while representing to the government its secular nature, *Fike v. United Methodist Children's Home of Va., Inc.*, 547 F.Supp. 286, 290 (E.D.Va.1982), *aff'd*, 709 F.2d 284 (4th Cir.1983);

(5) whether the church intimately involves itself in the management, the day-to-day operations, and the financial affairs of the entity, *Feldstein*, 555 F.Supp. at 977;

(6) whether the church supports or affiliates the entity, *Townley*, 859 F.2d at 619; *see Feldstein*, 555 F.Supp. at 977;

(7) whether the entity adheres to or deviates from an initial religious purpose, *Fike*, 547 F.Supp. at 290;

(8) whether the entity conducts religious activities, instruction, or services, *Fike*, 547 F.Supp. at 289–90.

### Factor (1)

It is undisputed that PCHSA is a non-profit entity.

### Factor (2)

The trial court found that the IRS has issued numerous rulings affirming PCHSA's nonprofit, charitable, and religious status. That finding of fact, being unchallenged on appeal, is binding on this Court. *See De Los Santos v. De Los Santos*, 794 S.W.2d 528, 529 (Tex.App.—Corpus Christi 1990, no writ); *Katz v. Rodriguez*, 563 S.W.2d 627, 631 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.) (op. on mot. for reh'g).

### Factor (3)

PCHSA's articles of incorporation and other pertinent documents state that PCHSA is organized for religious, charitable, and educational purposes. PCHSA's purpose is contained in the preamble to its bylaws and in the covenant between PCHSA and the Synod of the Sun.[2] Each document declares that PCHSA is to provide a variety of Christ-centered child care services characterized by professional competence and Christian concern.

### Factor (4)

PCHSA's contract with the Texas Department of Human Services (DHS) does not stress the religious nature of PCHSA's activities. The contract provides that PCHSA would comply with the Federal Civil Rights Act of 1964 and chapter 106 of the Texas Civil Practice and Remedies Code. *See* TEX.CIV.PRAC. & REM.CODE ANN. §§ 106.001–106.003 (Vernon 1986 & Supp. 1991). Compliance, according to the contract, includes giving equal opportunity without regard to religion both to those seeking employment and those seeking services. Discriminating against non-Christians seeking employment violates the contract.

PCHSA was not inconsistent in its representations regarding its religious nature. No direct evidence of any attempt by PCHSA to hide its religious nature from DHS was before the court. DHS was aware of PCHSA's policy regarding employment. PCHSA also had a policy of placing children only in homes of committed Christians. PCHSA could decline a DHS referral if the child's religious background was such that PCHSA would not be able to comply with its policy.

PCHSA never attempted to conceal its religious nature from the State. PCHSA's very name implies some connection with a religious body.

### Factor (5)

PCHSA's controller testified that the Presbyterian Church was not involved in

---

**2.** The Synod is a governing body of the Presbyterian Church (U.S.A.).

the day-to-day management and operation of PCHSA. PCHSA's president, an ordained minister of the Presbyterian Church, testified that the Synod exercised some supervisory control over PCHSA.

### Factor (6)

The IRS determined that PCHSA is affiliated with the Presbyterian Church. PCHSA's articles of incorporation, bylaws, and a formal covenant with the Synod reflect affiliation with the Presbyterian Church.

PCHSA's president testified that the overwhelming majority of donors to PCHSA are Presbyterian churches and their members. The Synod budgets money for PCHSA. The controller testified that the government furnished only five to seven percent of total operating funds from 1986 through the first two months of 1990. He stated that PCHSA received approximately ninety-four to ninety-five percent of its income from non-governmental sources.

### Factor (7)

PCHSA came into existence in 1902 or 1903 to care for motherless Presbyterian children. The church discovered a compelling need existed for group care of needy children. PCHSA's activities have since expanded, but, according to its president, the original purpose of providing Christ-centered child care has been maintained. He characterized PCHSA as a multi-service Christian church agency. When asked if he considered his employment at the agency as part of his own commitment as a Christian, he answered "yes." He testified that he would not be at the agency if it were not a vocational calling.

An IRS letter ruling states that PCHSA's "primary purpose is to aid persons in need, with special emphasis on children. In pursuit of such purpose, you operate children's homes and service agencies offering adoption, foster care, day care, and family life education services and maternity counselling." This letter does not refer to a religious purpose, nor does it infer that the quoted purpose is inconsistent with a religious purpose.

The Synod periodically reviews PCHSA's operations to evaluate PCHSA's institutional faithfulness as a Christian ministry. Whether PCHSA fulfills its stated intention of offering Christ-centered child care services determines if it continues as a mission of the church. No one testified that the Synod found that PCHSA continued to fulfill its religious purposes. The court could have reached that conclusion because of the testimony of the ongoing relationship between PCHSA and the Synod, and the Synod's continued support for PCHSA.

### Factor (8)

PCHSA's purpose of providing Christ-centered child care distinguishes it from State agencies. The children in PCHSA's residential care are taken to Presbyterian churches. The residential facilities do not instruct the children in the Presbyterian faith.

PCHSA's primary function is placement of children in adoptive and foster homes. PCHSA requires that both husband and wife be church-oriented and active in the same Christian church. The whole thrust of PCHSA's placements ensures that children are placed in homes where they receive Christian education and upbringing.

PCHSA places a number of "special needs" children. PCHSA believes that "special needs" children profit from a Christian family environment. Christian commitment allows families to accept a "child of Christ with whatever baggage he may come to them" and to guide him to adulthood as an adjusted and productive member of society. The family's spiritual resources provide a stable and full life to "special needs" children.

Speer and the Commission rely on an attachment to the contract between PCHSA and the DHS to show that PCHSA is not a religious entity. Attached as an addendum to the contract was PCHSA's Plan of Service. It stated: "[T]he goal of this program is to better serve the best interest of children. The objective is to provide suitable adoptive placements for 'special needs' children who are in the con-

servatorship of DHS Region 05." This statement is not inconsistent with a religious purpose.

### c. Conclusion

The court heard evidence that PCHSA is an affiliate of the Presbyterian Church, that the Presbyterian Church and its members support PCHSA, that IRS rulings imply that PCHSA is a religious entity, that PCHSA's articles of incorporation and other pertinent documents state a religious purpose, that PCHSA engages in activities of a religious nature, that PCHSA continues to fulfill its original religious purpose, and that PCHSA operates as a nonprofit corporation. Seven of the eight listed factors weigh heavily in favor of PCHSA's status as a religious corporation within the meaning of section 5.06(1) of the Act.

The record contains considerable evidence that religious purposes and principles constitute an important aspect of the functions performed by PCHSA. This evidence indicates that PCHSA's primary purpose and character are religious in nature. Although PCHSA performs work that can be performed in a secular manner, PCHSA performs its primary functions in a manner that is heavily influenced by Christian principles.

We hold that the trial court did not err in concluding as a matter of law that PCHSA is a religious corporation within the meaning of section 5.06(1). We overrule Speer's first two points of error and the Commission's first three points of error.

## IS PCHSA EXEMPT FROM THE PROHIBITION AGAINST RELIGIOUS EMPLOYMENT DISCRIMINATION?

### a. Section 5.06(1)

The trial court found that senior adoption workers perform work connected with PCHSA's religious activities. The court also concluded that PCHSA's discrimination against Speer was lawful under section 5.06(1) of the Act. In point of error number three, Speer contends that this legal conclusion is erroneous as a matter of law.

In her fourth point of error, she argues that the evidence is factually insufficient to support the trial court's finding that senior adoption workers perform work of a religious nature. The Commission asserts the same complaints in its points four through seven, as well as a legal insufficiency challenge.

We interpret a statutory provision in accordance with its plain language. *See Railroad Comm'n v. Miller*, 434 S.W.2d 670, 672 (Tex.1968). Section 5.06(1) of the Act exempts a religious corporation's employment of an individual of a particular religion if the individual "perform[s] work connected with the performance of *religious activities* by the corporation." TEX. REV.CIV.STAT.ANN. art. 5221k, § 5.06(1) (Vernon 1987) (emphasis added). The federal statute provides that religious entities can employ individuals of a particular religion to perform work connected with the *entity's activities*. 42 U.S.C.A. § 2000e–1 (West 1981). The federal statute does not require that the employee's work be connected with the entity's *religious* activities. Section 5.06(1) is more restrictive than the comparable federal provision.

### 1. The *Amos* Test

The Commission suggests that we apply the three-part test from *Corporation of the Presiding Bishop of the Church of Jesus Christ of Latter–Day Saints v. Amos*, 483 U.S. 327, 107 S.Ct. 2862, 97 L.Ed.2d 273 (1987), in our determination of whether PCHSA's activity is religious. The Supreme Court recited the three-part test applied by the district court. It did not approve or disapprove of the test. *See Amos*, 483 U.S. at 331 n. 6, 107 S.Ct. at 2866 n. 6. Under the *Amos* test, we first examine the financial and managerial ties between the religious organization and the activity. Second, we consider the nexus between the primary function of the activity in question and the religious rituals or tenets of the religious organization. If the financial and managerial ties are close and the nexus substantial, the activity is religious. If these first two connections are remote or the connection is tenuous, the

court considers the third factor—whether the employee's job has a substantial relationship with the religious organization's rituals or tenets. *Id.* at 331 n. 6, 107 S.Ct. at 2866 n. 6. In the *Amos* test, the term "religious organization" refers to the church with which the religious entity or employer is affiliated, not to the entity itself. *Id.* at 331–32, 107 S.Ct. at 2865–66.

Applying this test, we consider the legal insufficiency and factual insufficiency points of error. As already noted, the managerial ties between the Presbyterian Church and PCHSA were not close. The financial connection, although closer, was also not close.

The second part of the test involves consideration of the connection between the primary function of PCHSA's activity and the tenets of the Presbyterian Church. PCHSA places children in homes where they will receive spiritual education and upbringing. PCHSA's president testified that PCHSA's placement work was consistent with the tenets of the Presbyterian Church. He testified about the theological rationale for PCHSA's work and PCHSA's fulfillment of its Christian mission.

PCHSA provides a variety of Christ-centered child care services that involve ministering to the spiritual as well as other needs of children and youth. Prospective adoptive parents were required to sign a broad statement of Christian belief. PCHSA believes that adoptive parents' Christian commitment provides an emotionally and socially healthy environment for a "special needs" child. This evidence indicates a nexus between PCHSA's primary function and tenets of the Presbyterian Church.

The third part of the test involves a determination of whether there is a substantial relationship between a senior adoption worker's duties and the tenets of the Presbyterian Church. Speer and the placement director never discussed religious requirements in connection with the duties and responsibilities of the senior adoption worker position. PCHSA's placement director helped prepare a position description for the senior adoption worker position. The position's duties and responsibilities contained no religious requirements. Senior adoption workers do not perform religious rituals of the Presbyterian Church.

Speer testified that being Jewish would probably help in determining someone's commitment to the Jewish religion. A trier of fact could reasonably infer that being Christian would help one assess another's Christian commitment. Assessment of a prospective adoptive family's Christian commitment involves both objective and subjective measurements. A worker with a Christian background would be better equipped to make a subjective assessment.

■ PCHSA accomplishes its goal, a Christian upbringing for the children, by placing children in homes with committed Christians. PCHSA adoption workers are responsible for placements. Therefore, a senior adoption worker's duties and responsibilities are religious in nature.[3] The relationship between the tenets of the Presbyterian Church and the work performed by PCHSA adoption workers is not of the tangential nature found in the *Amos* case. *See Amos*, 483 U.S. at 332, 107 S.Ct. at 2866. The evidence supports a finding of a substantial relationship between a senior adoption worker's duties and the tenets of the Presbyterian Church.

Because the second and third factors are directly related to whether religious activities are being performed, we give more weight to them than to the first factor. We agree with Speer and the Commission that there was evidence that many of PCHSA's activities are also performed by secular organizations and agencies. However, a religious activity of a religious organization does not lose its special status because it holds some interest for persons who are not members of the faith, or because it occupies a position of respect in the secular world at large. *Feldstein*, 555 F.Supp. at 978. That child care services

---

3. *See Amos*, 483 U.S. at 344, 107 S.Ct. at 2872 (Brennan, J., concurring) (nonprofit provision of community services is often regarded by churches as a means of fulfilling religious duty and of providing an example of a way of life a church seeks to foster).

598

can be rendered in a secular fashion does not mean that they cannot be rendered in a religious manner. Because non-Christians are also committed to caring for children does not vitiate the Christian elements involved in the care and services provided by PCHSA.

The trial court's finding that PCHSA's senior adoption workers do in fact perform such work is supported by the evidence. The finding is not so against the overwhelming weight of the evidence that it was clearly wrong and unjust. We overrule the legal and factual insufficiency points of error.

### 2. Conclusion

The record and applicable factors support the determination that PCHSA is a religious corporation that employs senior adoption workers to perform work connected with PCHSA's religious activities. PCHSA's discriminatory conduct in not hiring Speer was within the exception contained in section 5.06(1) of the Act. The trial court's conclusion of law is correct. We overrule the Commission's points four through seven and Speer's points three and four.

### b. Section 5.07(a)(2)

■ In point of error number seven, Speer contends that the trial court erred as a matter of law in concluding that a provision in the Act extends to members of all Christian denominations. The Commission asserts the same complaint in its point of error number eight. Both of these points of error are based on the application of the current version of section 5.07(a)(2) of the Act. The trial court's conclusions of law also indicate that it relied upon the current version of section 5.07(a)(2). This provision currently provides:

(a) Notwithstanding any other provision of this article, it is not an unlawful employment practice:

. . . .

(2) for a religious corporation, association, society, or educational institution or an educational organization operated, supervised, or controlled, in whole or in substantial part, by a religious corporation, association, or society to limit employment or give preference to members of the same religion. . . .

Tex.Rev.Civ.Stat.Ann. art. 5221k, § 5.07(a)(2) (Vernon Supp.1991). This version became effective on September 1, 1989. Act of June 16, 1989, 71st Leg., R.S., ch. 1186, § 22(a), 1989 Tex.Gen.Laws 4824, 4832.

The arguments presented by the parties are based on the apparent assumption that the quoted current version of section 5.07(a)(2) applies to PCHSA's conduct. We determine otherwise. A legislative act becomes operative as notice when it goes into effect as law. The effective date is as provided by the legislature. *Norton v. Kleberg County,* 149 Tex. 261, 265, 231 S.W.2d 716, 718 (1950); *State v. White,* 401 S.W.2d 854, 855 (Tex.Civ.App.—Waco 1966, writ ref'd n.r.e.). PCHSA's discriminatory conduct occurred prior to the effective date of the revised version of section 5.07(a)(2).

The Texas Constitution forbids ex post facto laws and retroactive laws. Tex. Const. art. I, § 16; *Regal Properties v. Donovitz,* 479 S.W.2d 748, 751 (Tex.Civ.App.—Dallas 1972, writ ref'd n.r.e.). Procedural or remedial statutes do not fall within this constitutional ban. *Donovitz,* 479 S.W.2d at 751. In the absence of express legislative intent to the contrary, procedural legislation applies to pending litigation to the extent that subsequent steps in the case are to be taken under the new legislation. *Brooks v. Texas Employers Ins. Ass'n,* 358 S.W.2d 412, 414 (Tex.Civ.App.—Houston [1st Dist.] 1962, writ ref'd n.r.e.).

Substantive law includes rules and principles which fix and declare the primary rights of persons and their property and establish the type of remedy available when those rights are violated. *Id.* at 414–15. Laws may not operate retroactively to deprive or impair vested substantive rights acquired under existing laws, or to create new obligations, impose new duties, or adopt new disabilities with respect to past transactions. *Ex parte Abell,* 613 S.W.2d 255, 260 (Tex.1981).

The pre–1989 provision allowed only *educational* religious entities to limit employment to members of the same religion. The 1989 amendment deleted the educational requirement.

The conduct of which Speer and the Commission complain occurred prior to the effective date of the amendment. The amended version of section 5.07(a)(2) was a substantive change in the law. It cannot retroactively apply to PCHSA's actions.

We uphold the trial court's findings and conclusions only to the extent that they are founded upon section 5.06(1) of the Act. We overrule Speer's seventh point of error and the Commission's eighth point of error.

### c. Section 5.07(a)(1)

In Speer's fifth and sixth points of error, she complains that the trial court erred in not determining whether religion was a bona fide occupation qualification. She maintains that PCHSA could have reasonably accommodate her beliefs.

Section 5.07(a) of the Act contains five alternative exemptions to the general prohibition against job discrimination. These points of error are rendered moot by our disposition of her previous points. We overrule her fifth and sixth points of error.

### ATTORNEY'S FEES

In its cross point of error, PCHSA argues that the trial court abused its discretion in not awarding attorney's fees to PCHSA. The Commission argues that the current attorney's fees provision of the Act does not apply. Both the former and the current versions of the provision give the trial court discretion in awarding attorney's fees. TEX.REV.CIV.STAT.ANN. art. 5221k, § 7.01(e) (Vernon 1987 & Supp.1991). We need not determine which version applies because we hold that the trial court did not abuse its discretion in not awarding attorney's fees to PCHSA.

### a. Standard of Review

A trial court abuses its discretion when it acts arbitrarily or unreasonably, without reference to any guiding rules and principles. That a trial judge decided a matter within his discretionary authority differently than an appellate judge might decide the matter under the same circumstances does not establish that an abuse of discretion has occurred. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985), *cert. denied*, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986).

The federal statute awarding attorney's fees contains language identical to the Texas provision. *See* 42 U.S.C.A. § 2000e–5(k) (West 1981). PCHSA and the Commission agree that federal cases applying the federal statute apply to the companion Texas provision. The federal courts award attorney's fees to a prevailing *plaintiff* in all but special circumstances. *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 417, 98 S.Ct. 694, 698, 54 L.Ed.2d 648 (1978). The federal courts award attorney's fees to a prevailing *defendant* only when the court finds that the plaintiff's claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it was clear its claim was frivolous. *Id.* at 422, 98 S.Ct. at 700.

### b. Application of Law to Facts

PCHSA contends that the Commission and Speer brought this lawsuit knowing it had no legal foundation, and continued to litigate after it was evident the law did not support their positions. We do not agree.

Whether an employer fits within an exception to the general prohibition against religious discrimination depends upon the facts of the particular case. Although considerable evidence was presented that PCHSA was within the section 5.06(1) exception, some evidence was presented in support of Speer and the Commission's position. Reasonable people could disagree on these issues.

Texas has little case law under the Act. One of the Texas statutory provisions differs from the companion federal provision. The trial court did not act arbitrarily or unreasonably, nor did it act without reference to guiding rules and principles. It did

not abuse its discretion in declining to award attorney's fees to PCHSA. We overrule PCHSA's cross point.

We affirm the trial court's judgment.