Vicki SEBESTA, Appellant,

v.

KENT ELECTRONICS CORPORATION,
Appellee.

No. 01–94–00413–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Oct. 6, 1994.

Rehearing Overruled Nov. 3, 1994.

Jacqueline A. Armstrong, Houston, for appellant.

Edward L. Friedman, James E. Essig, Houston, for appellees.

Before COHEN, HEDGES and WILSON, JJ.

## OPINION

WILSON, Justice.

Appellant, Vicki Sebesta, filed suit against her employer, Kent Electronics, Corp., appellee, claiming the company fired her because of her service on a jury. Three causes of action were asserted: intentional infliction of emotional distress, fraud, and a violation of the Juror Reemployment Act. The trial court granted appellee's partial motion for summary judgment on the intentional infliction of emotional distress and fraud allegations. The resulting interlocutory summary judgment was severed from the Juror Reemployment Act claim, and this appeal taken. We affirm.

█ Our review of the judgment is limited to the issues presented to the trial court in the motion for summary judgment. TEX. R.CIV.P. 166a(c); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 676 (Tex. 1979); *Dickey v. Jansen*, 731 S.W.2d 581, 583 (Tex.App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.). A summary judgment is not entitled to the same deference given a judgment following a trial on the merits. The movant has the burden of showing there is no genuine issue of material fact, and it is entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548 (Tex.1985). When a defendant moves for summary judgment, as in this case, it must prove that the plaintiff cannot recover, as a matter of law, on any theory pleaded. *Delgado v. Burns*, 656 S.W.2d 428, 429 (Tex.1983). In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true, and every reasonable inference in favor of the nonmovant will be resolved in its favor. *Nixon*, 690 S.W.2d at 548–49; *Clark v. Pruett*, 820 S.W.2d 903, 905 (Tex.App.—Houston [1st Dist.] 1991, no writ). We review the evidence in this light.

### Fact Summary

Appellant, an employee of Kent Electronics for more than six years, received a notice to attend jury duty. She delayed attending twice before appearing on April 7, 1992. She was selected to serve on a jury in a Harris County civil district court and served for four days.

Her jury service completed, appellant returned to work. When pay day came, she noticed her check was short by two days. Appellant questioned Ms. Shirley Duty, a personnel representative, about this discrepancy, and Duty informed appellant that it was appellee's policy to pay an employee for only two days jury service. Appellee had

docked appellant for the other two days pay thereby explaining the short check.

Appellant then contacted the judge in whose court she had served and this judge contacted Mr. Roy Bartolus, an attorney who had represented Kent on some other matters, and suggested that he remind his client of the duties of corporate citizens concerning permitting employees to serve as jurors. It is unclear whether the judge warned appellee through Bartolus to be mindful of the relevant statute, or echoed appellant's personal view of what Kent's extra-statutory duties were, that is to pay appellant while she was absent from work fulfilling her jury obligation.

Appellant arranged a meeting with her immediate supervisor, Mr. William Fountain on April 16, 1992. At this meeting, appellant delivered a letter she wrote stating her pay had been docked for serving on a jury, and she did not understand why her employer would penalize an employee for serving on a jury. She then stated in her letter that:

If in fact your decision is a true reflection of the company's viewpoint on this matter, I can no longer continue my employment with Kent Electronics and wish to offer my resignation effective April 30, 1992.

Fountain responded to this letter by stating, "You can do whatever you want, but I won't be intimidated or threatened by anyone." The two discussed the matter of docking appellant's pay, and Fountain told her that if she wanted to apply sick time or personal time, she should have seen him about doing so. Fountain told her that she had irritated him, and that there must have been a way she could have gotten out of serving on the jury. Appellant explained that she could not get out of jury service, and Fountain agreed to permit her to apply personal leave time to the two days she missed due to jury duty. Appellant then verbally "rescinded" her resignation.

When appellant returned from lunch that day, she had a message from Fountain that she should request in writing the two days vacation (for which she would be paid) be substituted for the two days for which she was not paid. Appellant gave Fountain such a written request. She also delivered a written retraction of her resignation.

Two weeks later, Fountain called appellant into his office and stated he had decided to accept her resignation. Pam Huffman, the director of personnel at Kent, was also present at this meeting. Fountain told appellant she would be paid through April 30, and would receive whatever bonus checks, vacation time and sick time to which she was entitled. Appellant replied that she had rescinded the resignation, and Fountain stated that he had not accepted it.

Appellant was then escorted to her office by Fountain and met by a warehouse employee. The three began packing appellant's belongings in boxes. Then, when everyone was returning from lunch, the three walked through the office and out to appellant's car. Appellant characterizes this as the busiest time of the day. At the car, Fountain stated, "Thank you, and goodbye."

### Employment at will doctrine

Subject to certain narrow exceptions, employees in Texas may be terminated at will and without cause. *Wornick Co. v. Casas*, 856 S.W.2d 732, 735 (Tex.1993) (citing *Sabine Pilot Serv., Inc. v. Hauck*, 687 S.W.2d 733, 734 (Tex.1985) and *East Line & R.R.R. Co. v. Scott*, 72 Tex. 70, 10 S.W. 99, 102 (1888)). There are limitations to the at-will doctrine. *Winters v. Houston Chronicle Publishing Co.*, 795 S.W.2d 723, 724 (Tex.1990). One exception, at issue here, is the Juror Reemployment Act, TEX.CIV.PRAC. & REM.CODE ANN. § 122.001(a) (Vernon 1986), providing that "a private employer may not terminate the employment of a permanent employee because the employee serves as a juror."[1]

Appellant complains her firing was not a legal at-will, without cause, termination because it disregarded a specific state statute forbidding it. She further states the manner of the firing was in violation of certain common-law principles. In simplest terms, appellant pleads both the means used and the end achieved by Kent are actionable. Our

---

1. The remedy under the Juror Reemployment Act is limited to reinstatement, six months salary, and attorneys' fees. TEX.CIV.PRAC. & REM.CODE ANN. § 122.002 (Vernon Supp.1994).

analysis of the case depends on maintaining this distinction between the means used and the ends sought as we evaluate the evidence presented as it relates to both the statutory and common-law causes of action.

**Intentional infliction of emotional distress**

■ Recovery for the tort of intentional infliction of emotional distress requires a plaintiff to prove the following elements:

1) the defendant acted intentionally or recklessly;

2) the defendant's conduct was extreme and outrageous;

3) these actions caused the plaintiff severe emotional distress;

4) the emotional distress suffered by the plaintiff was severe.

*Twyman v. Twyman,* 855 S.W.2d 619, 621 (Tex.1993).

The trial judge signed a partial summary judgment and order of severance saying in part that, "assuming all facts averred by Plaintiff (appellant) are true, Defendant's conduct[2] was not extreme and outrageous as a matter of law." Appellee argues it conclusively proved its conduct was not extreme and outrageous, and that it had not acted intentionally or recklessly in causing appellant's alleged emotional distress. However, we review only the element of whether Kent's conduct could be reasonably construed as extreme and outrageous because the trial court's ruling was so limited. *Dyson Descendant Corp. v. Sonat,* 861 S.W.2d 942, 944 (Tex.App.—Houston [1st Dist.] 1993, no writ); *Carlisle v. Phillip Morris,* 805 S.W.2d 498, 518 (Tex.App.—Austin 1991, writ denied).

■ "Liability for outrageous conduct should be found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." RESTATEMENT (SECOND) OF TORTS § 46 cmt. d (1965) (cited with approval in *Twyman,* 855 S.W.2d at 621).

■ The court makes the initial determination whether, as a matter of law, a defendant's conduct may reasonably be regarded as "extreme and outrageous." *Wornick Co. v. Casas,* 856 S.W.2d 732, 734 (Tex.1993); RESTATEMENT (SECOND) OF TORTS § 46 cmt. h.

Appellant contends appellee's conduct was "extreme and outrageous" in two distinct ways. First, appellant claims she was fired by appellee in violation of the Juror Reemployment Act. Appellant argues the firing, given the statutory prohibition against such an act, constitutes extreme and outrageous conduct, per se. Second, appellant argues the conduct by which appellee fired appellant was extreme and outrageous. We examine each of these contentions independently.

**1. Fact of discharge**

Appellant states in her brief that:

Even if Kent Electronics (appellee) had *politely* explained that they were discharging her because of her failure to avoid serving on the jury, and then threw a going away party giving her a gift for past contributions to the company, their conduct *would still have been outrageous.* In sum, Vicki Sebesta claims that *in addition* to being unlawful, the termination in and of itself, was extreme and outrageous.

■ We hold that a violation of the statute, standing alone and without regard to other conduct, establishes nothing more than a cause of action under that statute. *See, e.g., Ugalde v. McKenzie Asphalt Co.,* 990 F.2d 239, 243 (5th Cir.1993) (applying Texas law) (even illegal conduct may not constitute extreme and outrageous conduct); *Prunty v. Arkansas Freightways, Inc.,* 16 F.3d 649, 654 (5th Cir.1994) ("even though conduct may violate Title VII as sexual harassment, it does not necessarily become intentional infliction of emotional distress under Texas law."). Even when the employer's conduct rises to the level of illegality, except in the most unusual cases it is not the sort of conduct, as deplorable as it may sometimes be, that constitutes extreme and outrageous

---

**2.** Whether or not the termination itself can be considered as part of the "Defendant's conduct" is a critical issue in deciding the case.

conduct. *Prunty,* 16 F.3d at 654 (citing *Wilson v. Monarch Paper Co.,* 939 F.2d 1138, 1143 (5th Cir.1991)).

We find no authority for the proposition that violation of the Juror Reemployment Act in itself is extreme and outrageous conduct as a matter of law. We overrule appellant's first point of error.

### 2. Manner of termination

Appellant contends in her second point of error that the method in which she was terminated was extreme and outrageous. In *Wornick Co. v. Cassas,* 856 S.W.2d 732, 733–34 (Tex.1993), the court held that the method of termination employed did not constitute intentional infliction of emotional distress. The method of termination included:

1. an unexpected firing;

2. previous favorable job evaluations;

3. the employee was told to leave the property immediately;

4. the employee was escorted by a security officer;

5. when the employee was speaking with the president of the company, the security guard waited at the door;

6. the employee was lead to believe by the president she was on a leave of absence, rather than being terminated;

7. the security guard told the employee he was called at home by the president to escort her off the premises;

8. the employee was told that the president requested the employee be off the premises in five minutes;

9. two security guards walked the employee with her boxes of belongings to her car;

10. it was not company policy to escort salaried employees off the premises; and

11. the president of the company never met with the employee as promised to discuss her termination.

*Id.* at 733–34. The court held, that, as a matter of law, this method of termination of

an employee was not extreme and outrageous. *Id.* at 736.

Appellant argues that her case is distinguishable from *Wornick* because,

1. her salary was docked for serving on a jury, when company policy provided that she could apply personal or vacation days for uncompensated absences;

2. Fountain yelled at her for serving on a jury and not doing something to get out of serving;

3. Fountain deliberately mislead appellant into believing she could apply vacation days to the uncompensated days, while knowing he would terminate her;

4. appellee terminated appellant in violation of the Juror Reemployment Act, despite being cautioned by the judge;

5. appellee violated its own policy of permitting an employee to apply personal or vacation days for uncompensated jury absences;

6. appellee attempted to avoid liability by calling appellant's termination resignation; and

7. an exit parade was arranged for the busiest part of the day.

Appellant argues that these facts show "extreme and outrageous" conduct.

In making the initial determination as to whether appellee's conduct may reasonably be regarded as extreme and outrageous as required by *Wornick,*[3] 856 S.W.2d at 734, appellee argues that we cannot consider the termination itself as part of the conduct considered even if the termination was in violation of statute. We agree. In this factual context, we find no authority providing any remedy to appellant for the act of termination as distinguished from the manner of termination other than by reference to the statute. The exception to the at-will doctrine created by statute contains its own remedy. To permit the possibility of common-law damages for the act of termination, whether considered by itself or in conjunction with other "conduct," impermissibly enlarges the

---

**3.** See Justice Hecht's concurring opinion in *Wornick,* 856 S.W.2d at 736, for a chronicle of the difficulties in applying this test.

remedy beyond the limits set by the legislature.

Therefore, in determining whether a defendant's conduct may reasonably be regarded as extreme and outrageous, we are limited to the evidence of the employer's conduct independent of the act of termination whether the firing was in violation of the statute or not.[4] The cause of action for intentional infliction of emotional distress under these facts lies solely with regard to the manner by which Kent conducted itself in effecting the termination.

■ We are obliged to assume the facts alleged by appellant are true. We find the evidence of Kent's conduct outlined by appellant and taken as true could not be reasonably regarded as "extreme or outrageous." *Wornick,* 856 S.W.2d at 736. The "exit parade," being yelled at on a single occasion, and the company's attitude as communicated to appellant about jury duty generally and about paying employees while on jury duty is not conduct so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, such as to be utterly intolerable in a civilized community. The parties argued, and tempers briefly flared. Termination of an employee is never pleasant, especially for the employee. *Id.* (see also pages 735–36 for list of cases with a variety of employers' conduct found to be, and not to be, extreme and outrageous). Accordingly, we overrule appellant's second point of error.

**Fraud**

■ A cause of action for fraud requires proof 1) that a defendant made a false representation, 2) knowing it was false, 3) with the intent that the plaintiff rely on the representation, 4) that the plaintiff justifiably relied on the representation, and 5) the plaintiff suffered damage. *DeSantis v. Wackenhut Corp.,* 793 S.W.2d 670, 688 (Tex.1990). The trial court granted summary judgment on this cause of action because the facts fail to

support a cause of action for fraud in the employment at will context. Appellant argues in her third point of error the court erred in this finding.

■ We first address the issue of "false representation." The parties dispute the nature of the representation. Appellee characterizes the false representation as one of continued employment that will not support a claim of fraud in light of the principle of employment at will. Appellant characterizes the false representations as:

1. the promise by Fountain that she would be permitted to use vacation days for the two non-compensable absences due to jury duty;

2. assurances by Fountain that the jury duty issue was resolved;

3. actions indicating that her previous retraction of resignation had been accepted, such as planning her schedule well into the future past the date of resignation and discussion with senior executives concerning her future with the company.

The second and third promises are essentially promises of continued employment, and, in the context of employment at will, cannot justifiably be relied upon to support fraud. *Berry v. Doctor's Health Facilities,* 715 S.W.2d 60, 62 (Tex.App.—Dallas 1986, no writ); *Collins v. Allied Pharmacy Management, Inc.,* 871 S.W.2d 929, 937 (Tex.App.—Houston [14th Dist.] 1994, no writ).

Appellant argues that because she was fired for serving on a jury, she is no longer in the employment at will context, and this cause of action is actionable as fraud. However, if she was fired for serving on a jury, she is limited to the remedies provided for in the Juror Reemployment Act. As an exception to the employment at will doctrine, the act narrowly prescribes limited recovery.

■ We next examine the first promise appellant alleges was fraudulent: that she was promised that her vacation time would be applied to her jury service. After she was

---

4. Considering the alleged unlawful termination as part of the conduct to be measured creates analytical difficulties. In reviewing the evidence, we consider the appellant's *facts* to be true, but what about the legal conclusions to be drawn

from the facts. Can we assume for purposes of review, the firing was in violation of the statute as the appellant desires? What if the facts presented do not set out at least a prima facie showing the statute was violated?

fired, for whatever reason, appellant was compensated for her accrued vacation time. She was paid for the two vacation days she had previously requested be allocated for jury service. Therefore, under these facts, we are unable to find that this was a false promise, as appellant was paid for the vacation time. We overrule appellant's third point of error.

Finding no reversible error, we affirm the judgment of the trial court.