**SOUTHWESTERN BELL MOBILE SYSTEMS, INC., Appellant,**

v.

**Odilia FRANCO and Patricia Mendez,Appellees.**

No. 13–95–322–CV.

Court of Appeals of Texas, Corpus Christi.

Aug. 21, 1997.

Rehearing Overruled Sept. 11, 1997.

**220** ■ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

Kathryn F. Green, Kleberg Law Firm, Corpus Christi, for Appellant.

William J. Kolb, Corpus Christi, Portia J. Bott, Dallas, for Appellees.

▬▬▬▬▬▬▬▬▬

## OPINION

YANEZ, Justice.

Southwestern Bell Mobile Systems, Inc., appeals from a judgment, rendered on a jury verdict, that it is liable to two former employees for intentional infliction of emotional distress and retaliatory termination under the Commission on Human Rights Act, TEX. LAB. CODE ANN. § 21.055 (Vernon 1996) (hereinafter "CHRA").[1] By five points of error, appellant challenges the sufficiency of the evidence, the attorney's fees, reinstatement, and punitive damages awarded, and the admission of particular documents into evidence. Appellees raise a contingent cross-claim. We affirm in part and reverse and remand in part.

## FACTUAL AND PROCEDURAL BACKGROUND

Odilia Franco and Patricia Mendez, appellees, were employees of Southwestern Bell Mobile Systems, Inc. (SBMS) at its Corpus Christi location. In the course of their employment as customer service representatives, both women were recipients of unwelcome comments of a sexual nature from the company's director of operations at the Corpus Christi office. In May 1990, Franco was fired because of absenteeism. She then informed the president of SBMS of sexual harassment she had endured from the director of operations in Corpus Christi before she was discharged, which led SBMS to investigate the conduct of this director of operations. Mendez, as did other employees, participated in this investigation. Mendez reported that she had witnessed inappropriate conduct of a sexual nature at work toward both her and Franco by the director of operations. This director of operations was fired a few weeks later. Franco was then rehired on a probationary basis, in exchange for "let[ting] go of [her] attorney." On November 1, 1990, however, both Franco and Mendez were terminated from SBMS for allegedly misappropriating air-time credit certificates and defrauding SBMS. Franco and Mendez subsequently filed charges of unlawful discrimination with the Corpus Christi Human Relations Commission, an arm of the Texas Commission for Human Rights, which led to investigations into SBMS by the United States Equal Employment Opportunity Commission ("EEOC").

By their original petition, filed March 27, 1991, Franco and Mendez filed suit against SBMS. Franco and Mendez alleged that SBMS was liable to them for retaliatory termination, intentional infliction of emotional distress, and defamation. On November 13, 1991, Franco filed another original petition, pursuant to her receipt of authorization to file a civil rights suit from the Commission on Human Rights. In the petition, she claimed that SBMS terminated her in May 1990 on

---

**1.** At the time these complaints were filed, the Commission on Human Rights Act was located at Article 5221k of the Texas Revised Civil Statutes. The Act since has been codified in the Texas Labor Code, *see* TEX. LAB.CODE ANN. § 21.001 et seq. (Vernon 1996), and we will cite to the Labor Code in our opinion because the codified version of the Act presents no changes in law that bear on the outcome of this case.

the basis of unlawful discrimination and then, following her reinstatement, terminated her again in November 1990 in retaliation for the claim of unlawful discrimination she filed after being discharged in May.

A jury found that SBMS did not make false and defamatory statements against either Franco or Mendez. The jury, however, did find that the company retaliated against both women for complaining of sexual harassment and that it intentionally inflicted emotional distress upon them. The jury awarded Franco and Mendez zero damages for the retaliatory discharge, but awarded Franco $25,500 and Mendez $20,000 as compensation for the inflictions of emotional distress. The jury also awarded Franco punitive damages in the amount of $20,000 and Mendez punitive damages in the amount of $25,500, pursuant to the intentional infliction of emotional distress findings. Franco and Mendez then filed a motion for the court to disregard the jury's zero-damages findings and enter judgment consistent with the jury's verdict.

By its judgment, signed on April 3, 1995, the trial court ordered that Franco recover a total of $68,250 from SBMS, plus $22,750 in attorney fees, and that she be reinstated with SBMS as a collection representative. The court ordered that Mendez also recover $68,250 from SBMS, plus $22,750 in attorney's fees. Subtracting the jury awards from the total damages ordered in the judgment, the court-ordered damage awards were $22,750 for Franco and $22,750 for Mendez. Costs also were adjudged against SBMS.

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

By its first point of error, SBMS challenges the legal and factual sufficiency of the evidence for the jury's finding that SBMS is liable to Franco and Mendez for intentional infliction of emotional distress. SBMS emphasizes that there were women employees who both complained of sexual harassment and were not subsequently discharged, and that the perpetrator of the harassment was, in fact, terminated, so that no employee had to work in an uncomfortable environment. Franco's and Mendez's response basically is that the unchallenged retaliatory termination finding should also be sufficient for a finding of intentional infliction of emotional distress.

■ In reviewing "no evidence" points of error, we must consider only the evidence and inferences that tend to support the finding and disregard all evidence and inferences to the contrary. *Weirich v. Weirich*, 833 S.W.2d 942, 945 (Tex.1992); *Stafford v. Stafford*, 726 S.W.2d 14, 16 (Tex.1987). If there is any probative evidence to support the finding, the point must be overruled. *Southern States Transp., Inc. v. State*, 774 S.W.2d 639, 640 (Tex.1989). In reviewing the "insufficient evidence" point, we must examine all of the evidence supporting and contrary to the jury's finding and may set it aside only if the evidence standing alone is so weak as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986) (per curiam); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661–62 (1951). If we reverse a finding for insufficient evidence, we must detail the evidence relevant to the matter under consideration and explain why the jury's finding is factually insufficient. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex.1986). The jury, as factfinder, is the judge of the credibility of witnesses and weight to be accorded their testimony. *Benoit v. Wilson*, 150 Tex. 273, 239 S.W.2d 792, 796 (1951); *Downen v. Texas Gulf Shrimp* Co., 846 S.W.2d 506, 511 (Tex.App.—Corpus Christi 1993, writ denied). One party does not have to negate with evidence the evidence presented by the other side; the jury may simply disbelieve the evidence. *Downen*, 846 S.W.2d at 511.

Under *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex.1993) (citing the RESTATEMENT (SECOND) OF TORTS § 46 (1965)), the elements of an action for intentional infliction of emotional distress are (1) the defendant intentionally or recklessly acted, (2) the conduct was extreme and outrageous, (3) this action caused the plaintiff emotional distress, and (4) the emotional distress suffered by the plaintiff was severe. Liability for outrageous and extreme conduct may be found "only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intoler-

able in a civilized society." *Twyman,* 855 S.W.2d at 621 (continuing to cite the RE-STATEMENT); *see also Mattix-Hill v. Reck,* 923 S.W.2d 596, 597 (Tex.1996); *Shaheen v. Motion Industries, Inc.,* 880 S.W.2d 88, 92 (Tex.App.—Corpus Christi 1994, writ denied). The target of appellant's challenge to the jury's finding being the requisite "extreme and outrageous conduct," we will examine the record for sufficient evidence of such conduct.

■ Franco did not make her sexual harassment complaint to SBMS in her capacity as an active employee. Rather, she reported the harassment to SBMS after being terminated for absenteeism in May 1990. This led to the sexual harassment investigation by SBMS in May 1990, in which Mendez participated and after which the director of operations was replaced. Franco then was offered reinstatement and she accepted. Thus both Franco and Mendez were employees of SBMS over the summer and into the fall of 1990 before they both were fired on November 1, 1990. If there is "extreme and outrageous" conduct in this case, it therefore must be the termination of Franco and Mendez on November 1, 1990, which, they each allege, was in retaliation for their sexual harassment complaints against SBMS. Indeed, in their appellate brief, Franco and Mendez note that "all of the facts and circumstances which relate to the retaliatory discharges also relate to the causes of action for intentional infliction of emotional distress." [2] Under the CHRA, an employer commits an unlawful employment practice if it retaliates against a person who, under the statute, opposes a discriminatory practice, makes or files a charge, files a complaint, or participates in any manner in an investigation, proceeding, or hearing. TEX. LAB.CODE ANN. § 21.055.

Just after Franco was terminated in May 1990, Mendez went to speak with a personnel officer for SBMS, in order to vouch for both Franco's claims of sexual harassment and her competence as an employee, and to urge an

investigation of the director of operations at SBMS. In May 1990, Mendez participated in the SBMS investigation of the director of operations. The director of operations was dismissed thereafter. Franco, as previously noted, was rehired, but both she and Mendez were terminated several months later.

SBMS presented evidence in support of its claim that it had a *bona fide* reason for terminating Franco and Mendez on November 1, 1990, *i.e.,* both women misappropriated company funds, particularly the air-time credit certificates, and thereby defrauded SBMS. The testimony from various witnesses established that these certificates were issued by authorized SBMS employees, including customer service representatives, as credits toward the accounts of customers who referred new customers to SBMS, or as means for resolving various billing disputes or discrepancies. The acting director of operations when Franco and Mendez were dismissed in November 1990 testified that, at that time, there was no written policy regarding the distribution of the certificates. On a monthly basis, he authorized the distribution of some number of certificates to each salesperson. The certificates were to be doled out in order to promote the sales of mobile phones. He also testified that around June 1990, one SBMS executive wanted a log kept on Franco and Mendez, in relation to their absenteeism and tardiness, and that it was his impression that this was wanted as a means of compiling enough information to terminate both women "with no recourse."

In relation to other evidence, however, this log could have been ordered in response to findings suggesting that Franco and Mendez were defrauding the company which were reported to SBMS management. A current customer contact employee of SBMS testified that in April 1990 she conducted research of accounts under the purview of Franco and Mendez, pursuant to her independent discovery that many of their past due accounts had been made up by credit adjustments, and

---

**2.** To be clear, SBMS did not challenge the legal or factual sufficiency of the retaliatory discharge finding, *per se,* but as the same facts were pleaded to support both actions, an inquiry into whether a retaliatory discharge occurred cannot be separated from an inquiry into the finding on intentional infliction of emotional distress. SBMS, we note, failed to request an election of remedies anytime at trial.

that she reported her findings to management that same month. Her findings suggested that Franco and Mendez fraudulently applied air-time credits to accounts of their friends and family, as the proper documentation for credit adjustments made to these accounts was not on file. By this research, Mendez's father's account, for example, had received credit adjustments totaling $991.23 over about one-and-a-half years "with no supporting documentation on file." Only one $50 air time certificate, as another example, was on file for the account of Franco's sister to which $215 had been credited by SBMS. The employee who performed this research testified that supporting documentation for any credit adjustments made to accounts should have been in the account files.

Written answers by SBMS to questions posed by the EEOC, however, may have impugned the credibility that the jury assigned to this testimony and research. These documents indicated that not all documentation for credit adjustments must appear on file, because, as a matter of course, the credit certificates are either *shredded* after they have been applied *or* placed in the account file. Both these documents and testimony indicated that SBMS employees besides Franco or Mendez could have made adjustments to the accounts under their purview. The personnel officer who dismissed both Franco and Mendez, moreover, admitted that he had no documentation supporting the basis for their terminations with him when he discharged them. Both Franco and Mendez testified that they were not shown proof from SBMS of the alleged misappropriation and fraud for which they were terminated. There also is undisputed testimony by Franco that her personnel file with SBMS describes the period between when she was

terminated in May 1990 and then reinstated shortly thereafter as "vacation" time. The SBMS employee evaluations for Franco and Mendez on record did not give them high marks overall; but they also did not implicate either woman in a scheme to defraud SBMS. In consideration of the jury's authority to determine the credibility and weight of witness testimony, we hold that the finding of retaliatory termination is both supported by legally sufficient evidence and not so contrary to the evidence as to be clearly wrong and unjust.

■ The question remains, however, whether evidence of this termination was sufficient for the jury to determine that it also constitutes the "outrageous and extreme" behavior contemplated in an intentional infliction of emotional distress cause of action.[3] There have been cases in which retaliatory employment practices were held not to constitute "outrageous and extreme" conduct. *See, e.g., Diamond Shamrock Refining & Marketing Co. v. Mendez*, 844 S.W.2d 198, 202 (Tex.1992) (finding insufficient evidence in support of appellant's claim that company told all of his fellow employees he was a thief); *Garcia v. Andrews*, 867 S.W.2d 409, 412 (Tex.App.—Corpus Christi 1993, no writ) (sustaining finding that as a matter of law corporate manager's leering at appellant from a distance, comment to appellant about her "best work" possibly being in the dark, and comments to appellant about his wife's magazine article sexually assessing men did not constitute "outrageous and extreme" conduct). The Texas Supreme Court has noted, nevertheless, that there may be instances in which termination is accompanied by the "beyond all possible bounds of decency" behavior needed for the tort of intentional infliction

---

3. We are aware that the Texas Supreme Court has never recognized the tort of intentional infliction of emotional distress within an employment relationship context. *See, e.g., Diamond Shamrock Refining & Marketing Co. v. Mendez*, 844 S.W.2d 198, 201 (Tex.1992) (declining to do so because plaintiff offered no more than a scintilla of evidence of outrageous conduct). Various courts of appeals, however, have done so. *See, e.g., Bushell v. Dean*, 781 S.W.2d 652, 657–58 (Tex.App.—Austin 1989), *rev'd on other grounds*, 803 S.W.2d 711 (Tex.1991); *Tidelands Auto. Club v. Walters*, 699 S.W.2d 939, 944 (Tex.App.—

Beaumont 1985, writ ref'd n.r.e.); *but see Amador v. Tan*, 855 S.W.2d 131, 135 (Tex.App.—El Paso 1993, writ denied). This Court has reviewed an appeal of a summary judgment order against a claimant whose sole cause of action was for intentional infliction of emotional distress, based on allegations of sexual harassment in her workplace. *Garcia v. Andrews*, 867 S.W.2d 409 (Tex.App.—Corpus Christi 1993, no writ). While we found no genuine issue of material fact on an element of appellant's claim, we did not dismiss the claim for failure to state a cause of action. *Garcia*, 867 S.W.2d at 412.

of emotional distress. *Diamond Shamrock,* 844 S.W.2d at 202. In this vein, we find *Higginbotham v. Allwaste, Inc.,* 889 S.W.2d 411 (Tex.App.—Houston [14th Dist.] 1994, writ denied) informative. In that case, which was a review of a summary judgment against the complainant, the court of appeals held that if the complainant can demonstrate that he was terminated for refusing to participate in activities that would have violated federal law, then, by this proof, he will have demonstrated that the retaliation against him by his employer is "extreme and outrageous" for purposes of his intentional infliction of emotional distress action. *Higginbotham,* 889 S.W.2d at 416–17. Crucial to the Court's reasoning was the observation that unlawful conduct "is intolerable in a civilized community." *Id.* at 416. In the instant case, Franco and Mendez complained of conduct that constitutes actionable retaliatory discrimination under the CHRA, *i.e.,* they were terminated for reporting egregious acts of sexual harassment by their employer. The purpose of the CHRA is to execute federal civil rights policy in employment contexts, to protect persons in this state from employment discrimination, and thereby to protect the personal dignity of those persons. TEX. LAB. CODE ANN. § 21.001 (Vernon 1996). Retaliatory termination therefore is not merely conduct violative of a private right and for which a private remedy is available. *Cf. Downs v. McCampbell,* 203 S.W.2d 302, 305 (Tex.Civ. App.—Austin 1947, no writ) (reviewing the legal definition of the term "tort"). Under the CHRA, retaliatory termination implicates not simply federal and state policy but also, or more precisely, the personal dignity of all working Texans. We thus follow the reasoning in *Higginbotham* and extend it to hold that an employee who demonstrates that he is the victim of retaliatory termination may also have demonstrated "extreme and outrageous" conduct against him for purposes of an intentional infliction of emotional distress cause of action. Retaliatory termination was found by the jury in this case and was sustained by our factual sufficiency review of that finding. That Franco and Mendez presented sufficient evidence of distress they suffered as a result of the terminations has not been specifically challenged by SBMS,

and evidence of emotional distress caused by the terminations is on record. We therefore hold that the evidence of the circumstances leading up to and surrounding the termination of Franco and Mendez was both legally and factually sufficient for the finding of extreme and outrageous conduct by SBMS.

Point of error one is overruled. On this point, morever, we would add that the dissenting opinion is both confused and disturbing. The dissent agrees that retaliatory termination occurred in this case, but would deny the jury's intent to award damages for intentional infliction of emotional distress caused by the retaliation (where it award zero damages as compensation for the retaliation *per se* ), on the ground that there is no evidence in support of that finding. Citing *Wornick Co. v. Casas,* 856 S.W.2d 732, 735 (Tex.1993), it observes that the termination of an at-will employee under conditions that do not raise an exception to the employment-at-will doctrine cannot, as a matter of law, constitute outrageous behavior. Hence, the dissent reasons, even though the termination was wrongful, this fact alone cannot constitute "extreme and outrageous" behavior. The manner of discharge may be actionable as extreme and outrageous conduct, the dissent acknowledges, and concludes that there was no such conduct in this case.

To clarify matters, we in no way have suggested that a finding of retaliatory termination is *per se* extreme and outrageous conduct. What we have held simply is that evidence in support of a finding of retaliatory termination may support a finding of "extreme and outrageous" conduct. In the instant case, the evidence supporting the retaliatory termination finding was not challenged *per se* by SBMS, although, in challenging the tort finding, appellant urged that retaliatory termination was unlikely. In the course of carrying out the sufficiency of the evidence challenge to the tort finding, we found the evidence legally and factually sufficient for the finding of retaliatory termination. In consideration of federal and Texas civil rights policy interests in personal dignity underlying the retaliatory termination action and the jury's place in weighing the severity of attacks on personal dignity, we held that, in

this instance, the evidence of retaliatory termination was legally and factually sufficient for the jury also to find intentional infliction of emotional distress.

We find, moreover, the dissent's contention that none of the conduct about which Franco and Mendez complained rose to the level of "extreme and outrageous" conduct ironically "outrageous" for four reasons: (1) even SBMS admitted that there had been a sexual harassment problem; (2) the dissenting opinion actually references a "crotchless panties" comment made by a former SBMS supervisor, (3) Franco and Mendez, even the dissent would agree, were terminated for complaining of such crude and sexist behavior; and (4) to not find that any "extreme and outrageous" conduct is implicated by these facts, especially the termination, strikes us as remarkably medieval jurisprudence.

## ATTORNEY'S FEES AND REINSTATEMENT AWARDED

By its second and third points of error, SBMS complains of the attorney's fees awarded to Franco and Mendez and the court-ordered reinstatement of Franco. By their second point of error, SBMS argues that under the CHRA, appellants were not entitled to attorney's fees or reinstatement because they were not the "prevailing party" on the retaliatory discharge action and because they failed to prove the necessity of attorney's fees. In response, appellees allege that point of error two is multifarious, that they were the prevailing party on the retaliatory termination action, and that sufficient evidence for attorney's fees was presented. By its third point of error, SBMS alleges that the trial court erred in considering and granting appellees' motion for attorney's fees and equitable relief. Appellees deny there was any error and argue that sufficient evidence was presented regarding attorney's fees and reinstatement.

■ In examining point of error two, we begin with appellees' claim that it is "multifarious," such that the error complained of is waived. We recognize that under point of error two, SBMS makes several distinct claims and that neither the claims nor the prose in which they are presented are models of clarity. Each claim, however, pertains to the general error complained of in the point of error, *i.e.*, each objects to the relief granted under the CHRA. We therefore will address the point of error in full. Tex.R. App. P. 74(d).

■ SBMS first argues that, for attorney's fees purposes, neither Franco nor Mendez were "prevailing parties" because the jury awarded them zero damages on the statutory action. We disagree.

Under Section 21.259, a trial court may award the prevailing party in a suit under the CHRA a reasonable attorney's fee. Tex. Lab.Code Ann. § 21.259 (Vernon 1996). Because the purpose of the CHRA is to implement federal civil rights law, state courts have looked to relevant federal law as guidance in interpreting the statute. *Schroeder v. Texas Iron Works, Inc.*, 813 S.W.2d 483, 487–88 (Tex.1991); *Speer v. Presbyterian Children's Home*, 824 S.W.2d 589, 593 (Tex. App.—Dallas 1991), *error granted, vacated, error dism'd*, 847 S.W.2d 227 (Tex.1993). SBMS correctly identifies *Farrar v. Hobby*, 506 U.S. 103, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992), as the leading federal case on the meaning of the term "prevailing party" in the context of attorney's fees under 42 U.S.C. § 1988. In this case, the United States Supreme Court denied attorney's fees to a civil rights litigant who was awarded only nominal damages. *Farrar*, 506 U.S. at 115, 113 S.Ct. at 575. The Court held that:

[t]o qualify as a prevailing party, a civil rights plaintiff must obtain at least some relief on the merits of his claim. The plaintiff must obtain an enforceable judgment against the defendant from whom fees are sought ... or comparable relief through a consent decree or settlement ... Whatever relief the plaintiff secures must directly benefit him at the time of the judgment or settlement.... In short, a plaintiff "prevails" when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff.

506 U.S. at 111–12, 113 S.Ct. at 573. *See also Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.,* 489 U.S. 782, 792–93, 109 S.Ct. 1486, 1493–94, 103 L.Ed.2d 866 (1989); *Rhodes v. Stewart,* 488 U.S. 1, 4, 109 S.Ct. 202, 203–04, 102 L.Ed.2d 1 (1988); *Hewitt v. Helms,* 482 U.S. 755, 761, 107 S.Ct. 2672, 2676, 96 L.Ed.2d 654 (1987). Dispositive under *Farrar* thus is the relief secured by the *judgment* of the trial court, not the jury's verdict; and herein lies the problem for appellant's argument.

Appellant relies on the finding of the jury on damages for its position that appellees were not entitled to attorney's fees. The jury awarded both Franco and Mendez nothing in relation to the finding that SBMS discharged both women in retaliation for their complaints of sexual harassment. The women, however, also filed a motion to disregard the jury's findings and enter judgment consistent with the verdict. The CHRA also authorizes an award of damages upon a finding that a respondent engaged in an unlawful intentional employment practice. TEX. LAB. CODE ANN. § 21.2585. By its judgment, the court ordered damages of $22,750 to Franco and Mendez each, on top of what the jury had awarded in compensatory and punitive damages for the intentional infliction of emotional distress. Under our duty to reconcile apparent conflicts in jury findings whenever possible, *see C & R Transport, Inc. v. Campbell,* 406 S.W.2d 191, 195 (Tex.1966), we must recognize these amounts as damages awarded for the retaliatory discharge finding under the statute. These damages were ordered paid to appellees by the judgment of the court, and they materially altered the legal relationship between SBMS and both Franco and Mendez by making SBMS liable to them for a significant dollar amount to the latter. We hold that Franco and Mendez were prevailing parties in this case by virtue of the damages awarded them by the trial court's judgment on the statutory claim.

■ Appellant next claims the trial court abused its discretion in ordering the reinstatement of Franco with SBMS as a collection representative, on the ground that the evidence indicated that such an order would be unfeasible. Appellant cites to the testimony of several SBMS employees who were skeptical of Franco's ability to return as a successful member of the SBMS team of employees, and who indicated there were few personnel openings with SBMS in Corpus Christi at the time. An SBMS customer care supervisor, however, testified that a customer service representative position would be opening in the future, and the director of operations indicated that a new SBMS office soon would be opening up in the city, which would result in the following positions to be filled: a customer service contact representative, a telemarketer, and a receptionist. SBMS employees who expressed their skepticism about Franco's return to SBMS also expressed their willingness to try to work with her successfully, if the court ordered reinstatement. We hold that the court did not abuse its discretion in ordering the reinstatement of Franco.

■ Next, SBMS objects to the reasonableness of the attorney's fees awarded, on the ground that no proper documentation supported the award. Appellant notes that the trial court requested billing hours information from counsel for the appellees and that the information was not produced. Appellees respond that under Section 38.004 of the Texas Civil Practice & Remedies Code, the trial judge was authorized to take judicial notice of the attorney's fees from the contents of the case file without receiving further evidence.

■ Section 38.004 of the Civil Practice and Remedies Code allows a court to take judicial notice of the usual and customary attorney's fees and of the contents of the case file without receiving further evidence in a proceeding before the court or in a jury case in which the amount of attorney's fees is submitted to the court by agreement. TEX. CIV. PRAC. & REM.CODE § 38.004 (Vernon 1986). Section 38.004, however, may be relied upon only when a party seeks attorney's fees under one the claims listed under section 38.001 of the code. *Coward v. Gateway Nat'l Bank,* 525 S.W.2d 857, 859 (Tex.1975); *Hasty Inc. v. Inwood Buckhorn Joint Venture,* 908 S.W.2d 494, 503 (Tex.App.—Dallas 1995, no writ). The claims listed under section 38.001 are for rendered services, per-

formed labor, furnished material, freight or express overnight charges, lost or damaged freight or express, and killed or injured stock. TEX. CIV. PRAC. & REM.CODE § 38.001 (Vernon 1986). Because attorney's fees are being sought in the instant case under a separate statute, section 38.004 is inapplicable.

Again, therefore, we will look to federal law for guidance. *Cf. Speer,* 824 S.W.2d at 599 (referencing federal law in reviewing attorney's fee issue under the CHRA). The United States Supreme Court has held that a party seeking reimbursement of attorney's fees pursuant to 42 U.S.C. § 1988 in the context of a claim under 42 U.S.C. § 1983 has the burden of establishing the number of attorney hours expended. *Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983). The burden may be met only by a presentation of evidence that is adequate for the court to determine what hours should be included in the reimbursement. *Hensley,* 461 U.S. at 437, 103 S.Ct. at 1941. The Court added that the standards set forth in this opinion generally are applicable to all cases in which Congress authorized an award of fees to a prevailing party. *Id.* at 433 n. 7, 103 S.Ct. at 1939 n. 7. In the case before us, counsel for appellees never provided the billing hour information requested by the trial court at the close of the hearing on post-trial objections. We hold that the trial court abused its discretion in awarding attorney's fees without sufficient evidence. In relation to the reasonableness of attorney's fees, point of error two is sustained.

■ By its third point of error, appellant charges that the trial court erred in hearing Franco's and Mendez's post-verdict motions to amend their pleadings so as to pray for attorney's fees and equitable relief. We find it difficult to discern precisely what the argument is under this point, but it appears to be as follows: Because Franco and Mendez failed to request attorney's fees and reinstatement in their original petition, appellants were surprised by their post-verdict motions to amend their pleadings, and this should have required the trial court to deny the motions. Appellees respond that the tri-

al court committed no error in granting the motions because SBMS could not credibly claim to have been surprised by them.

■ Under Rule 66 of the Rules of Civil Procedure, defects in pleadings called to the attention of the court during trial may be cured, and the court may allow the amendment freely "when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the allowance of such amendment would prejudice him . . . ." TEX.R. CIV. P. 66. The court has no discretion to refuse an amendment unless the opposing party presents evidence of surprise or the amendment asserts a new cause of action, and thus is prejudicial on its face, and the opposing party objects to it. *Chapin & Chapin, Inc. v. Texas Sand & Gravel Co.,* 844 S.W.2d 664, 665 (Tex.1993) (citing *Greenhalgh v. Service Lloyds Ins. Co.,* 787 S.W.2d 938, 939 (Tex. 1990)); *see also Texas Commerce Bank Reagan v. Lebco Constructors, Inc.,* 865 S.W.2d 68, 79 (Tex.App.—Corpus Christi 1993, writ denied). The burden of showing surprise or prejudice is on the opposing party. *Id.* In their original petition, Franco and Mendez did fail to request either attorney's fees or reinstatement in their prayer for relief. The statute under which they sued, however, specifically allows that attorney's fees be awarded to the prevailing party. TEX. LAB.CODE ANN. § 21.259. Franco's second petition, which related to the petition she had filed with Mendez, specifically requested attorney's fees and reinstatement. Following the jury's verdict and before judgment was entered, Franco and Mendez filed the post-verdict motions for attorney's fees and/or equitable relief. SBMS presented no evidence of surprise in relation to the post-verdict (and pre-judgment) motions for attorney's fees and equitable relief. We hold that the trial court did not abuse its discretion in granting the post-verdict motions. Point of error three is overruled.

## PUNITIVE DAMAGES

By its fourth point of error, appellant complains of the punitive damages. Appellant first argues that the award is improper because there is legally or factually insufficient

evidence for the underlying claim of actual damages. Appellant also argues that even if actual damages properly were awarded, a proper damages question was not submitted to the jury, and that appellant's proper question was erroneously denied. Appellees maintain that this point of error is multifarious, that the question submitted to the jury was proper, that the question appellant offered was improper, and that appellant's complaint was not preserved for review because the trial judge's signature is not reflected on the denied question and instructions.

■ We held that the evidence was legally and factually sufficient to support the appellee's claim for actual damages. The first claim within appellant's fourth point of error is therefore overruled. As to the form of the punitive damages question in the jury charge, this issue was not waived by appellant, because, despite the lack of the judge's signature on the question and instructions denied, *see* TEX.R. CIV. PROC. 276, appellant timely objected to the proposed charge, opposing counsel was aware of the objection, and the trial court unequivocally overruled it. *Oechsner v. Ameritrust Texas, N.A.*, 840 S.W.2d 131, 133 (Tex.App.—El Paso 1992, writ denied).

■ The trial court has broad discretion to construct a charge that aids the jury and correctly states the law. *Natland Corp. v. Baker's Port, Inc.*, 865 S.W.2d 52, 64 (Tex. App.-Corpus Christi 1993, writ denied). The question on punitive damages submitted to the jury asked what sum of money should be awarded appellees as punitive damages and then defined the term. The "factors to consider" that appellant would have included with the punitive damages question largely tracked those factors considered in appellate review of exemplary damages awards for reasonableness, as set forth in *Alamo Nat'l Bank v. Kraus*, 616 S.W.2d 908 (Tex.1981). These factors include the nature of the wrong, the character of the conduct involved, degree of culpability of the wrongdoer, sensibilities of the parties concerned, and the extent to which such conduct offends a public sense of justice and propriety. *Alamo Nat'l Bank*, 616 S.W.2d at 910. The definition of exemplary damages provided to the jury and the instructions as to the underlying intentional infliction of emotional distress tort raised the issues of the character of the conduct, degree of culpability, the sensibilities of the parties involved, the extent to which the conduct offends a public sense of propriety, and penalty.[4] The charge therefore effectively included the requested factors for consideration. The ques-

---

4. The punitive damages question in the charge to the court reads:

What sum of money, if any, do you find from a preponderance of the evidence ODILIA FRANCO should be awarded against SOUTHWESTERN BELL MOBILE SYSTEMS, INC. as punitive damages?
"PUNITIVE DAMAGES" means an amount which you may in your discretion award as an example to other and as a penalty or by way of punishment.
"PUNITIVE DAMAGES" may be awarded in addition to any amount which may be or has been found as actual damages.
Essentially the same question was asked in relation to punitive damages to be awarded Patricia Mendez.
The jury was instructed as follows in relation to appellees' intentional infliction of emotional distress causes of action against appellant:
You are instructed that in order to find that Defendant Southwestern Bell Mobile Systems, Inc. is liable for the tort of "intentional infliction of emotional distress", you must find (1) an employee of Defendant Southwestern Bell Mobile

Systems, Inc. acted intentionally or recklessly; (2) the employee's conduct was extreme or outrageous; (3) the actions of the employee caused Plaintiff emotional distress [sic] and (4) the emotional distress suffered by Plaintiff was severe. You are instructed that "extreme or outrageous" means only conduct that has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Rude behavior does not equate to outrageousness, and behavior is not outrageous simple [sic] because it may be tortious.
You are instructed that "emotional distress" means any unpleasant mental reactions such as grief, shame, humiliation, embarrassment, anger, disappointment.
You are instructed that "severe emotional distress" means any highly unpleasant reactions such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea.... By extreme it is meant that the distress inflicted is so severe that no reasonable person could be expected to endure it without undergoing unreasonable suffering.

tion on punitive damages that appellant offered, moreover, inquired as to the sum of money that would serve as exemplary damages for appellant's "failure to act in good faith," despite breach of a good faith duty not being an element of the underlying cause of action for intentional infliction of emotional distress.' *See Twyman*, 855 S.W.2d at 621. Hence appellant's requested question was improper. We hold that the punitive damages question submitted to the jury does not reflect an abuse of discretion by the court. Point of error four is overruled.

## ADMISSIBILITY OF SBMS ANSWERS TO EEOC

By point of error five, appellant claims the trial court erred in admitting into evidence documents that allegedly were the SBMS responses to questions from the EEOC, on the ground that they were not properly authenticated as such under Rule 901(b)(7) of the Rules of Civil Evidence. Because these documents, once admitted, were used to undermine the credibility of SBMS's position that Franco and Mendez were terminated for having defrauded the company, SBMS claims this error resulted in manifest harm to its interests. Appellees respond that appellant's brief fails to provide specific references to these documents, such that the point is fatally defective; and, in the alternative, that the documents were properly admitted by the definition of "not hearsay" under Rule 801(e)(2); that SBMS's objection was waived; that a witness for SBMS laid the necessary predicate; that the documents were merely cumulative of other evidence; that there was no harm from admission of the documents; or that any error from admission of the documents was invited.

■■■ We find the reference to the EEOC documents in appellant's brief sufficiently specific so as not to find the point of error fatally defective, but we will hold that the claimed error was not preserved for appeal. By offering these documents into evidence, appellees sought to demonstrate that one

possibility as to why some redeemed air time certificates were not in the files for Franco's or Mendez's accounts was that they were not required to be. When only a portion of these documents initially was offered as evidence, the court admitted this portion as an admission against party interest, because appellees had received the documents from SBMS in discovery and they suggested an inconsistency with the company's answer as to whether air time certificates ever were shredded.[5] Any error committed by the trial court, however, ultimately was waived by SBMS. Subsequent to SBMS's objections to these documents on the ground of improper predicate, an account representative for SBMS testified that she had been given a copy of these documents by SBMS attorneys and the SBMS personnel office in Dallas. She also assented to the document's indications that some air-time certificates were shredded as matter of policy and that it was possible for a customer service representative to make adjustments to accounts handled by another customer service representative. Immediately after this account representative testified to these facts, counsel for SBMS expressly withdrew his objection as to the proper predicate for admission of the documents. We hold that this withdrawal of the objection constitutes a waiver of any objection to the predicate for admission of the documents, and that, as such, this matter was not preserved for appeal. Point of error five is overruled.

## CROSS-POINT

Appellees argue that a new trial is required, if this Court concludes that the trial court did not reconcile the apparent conflict in the jury's responses to the actual damages questions submitted in the charge; if this Court "strikes down" the judgment entered on the jury's answers under the intentional infliction of emotional distress theory; or if the Court "strikes down" the "extra statutory relief, *i.e.*, reinstatement and attorney's fees ..." We did not hold that the jury findings presented an irreconcilable conflict.

---

**5.** By this reasoning, the court put the proverbial cart before the horse, because when the excerpt was offered, there was no proper authentication established other than counsel for appellees' assertion that the documents had been received in discovery.

We also held that the evidence was factually sufficient for the finding of intentional infliction of emotional distress. We did hold, however, that the award of attorney's fees is in error; thus we will consider the cross-point.

By its cross-point, appellees would argue that the verdict presented an irreconcilable conflict, in that the jury found in favor of appellants on both the tort action and the retaliatory termination action but awarded zero damages to appellants under the statutory action. The jury, appellees hypothesize, believed that awarding damages under the statutory action in addition to the tort action would have effected a double recovery. Even though the trial court reconciled the findings so as give weight to the statutory claim by awarding attorney's fees under it, the argument continues, Franco and Mendez really were entitled to lost income under the statute. Franco and Mendez, however, filed a motion to disregard the verdict and enter judgment consistent with the jury's findings, which, we determined, was granted. They therefore have no complaint on this matter, and this cross-point is overruled.

Accordingly, we reverse and remand the judgment of the trial court on the matter of attorney's fees; the remainder of the judgment is affirmed.

Dissenting Opinion by SEERDEN, C.J., joined by DORSEY,J.

SEERDEN, Chief Justice, dissenting

I respectfully dissent from the majority opinion affirming Franco and Mendez's judgment against Southwestern Bell. I would reverse and render judgment for Southwestern Bell on Franco and Mendez's claims for intentional infliction of emotional distress, attorney's fees, and punitive damages.

Franco and Mendez worked as customer service representatives for Southwestern Bell Mobile Systems, and had some control over the distribution of free air-time credits to customers. They claimed that Southwestern Bell had fired them on the pretext of their having stolen certain air-time credits by giving them away to their family and friends, but in reality for having made prior complaints concerning sexual harassment by a former Southwestern Bell employee. Both women were terminated on November 1, 1990, by Southwestern Bell's director of finance, Joe Villarreal. Franco testified that she was called into Villarreal's office and told that she was being terminated for giving out air-time certificates to friends and relatives, but that Villarreal refused to give her specific information about the air-time credits in question. Franco was told to leave immediately, and Southwestern Bell retrieved the mobile phone from her car. Mendez similarly testified that she was called into Villarreal's office and fired for giving air-time credits to her friends and relatives. Mendez further testified that she was asked to leave the premises immediately and that several other employees watched as she packed her belongings and had the mobile phone removed from her car.

Franco and Mendez sued Southwestern Bell for intentional infliction of emotional distress, defamation, and wrongful termination in retaliation for their complaints concerning sexual harassment. The case was tried to a jury and a verdict was returned in favor of Southwestern Bell on the defamation claims. However, the jury found that Southwestern Bell had intentionally inflicted severe emotional distress upon both women, and that the sums of $25,500 for Franco, and $20,000 for Mendez, would compensate them for the mental anguish and loss of earning capacity caused by such distress. The jury also found that Southwestern Bell discharged Franco and Mendez in retaliation for their complaints of sexual harassment, but that neither suffered any damages as a result. Finally, the jury assessed punitive damages at $20,000 for Franco, and $25,500 for Mendez.

Franco and Mendez then filed post-trial motions asking, among other things, for the trial court to award attorney's fees. The trial court heard these motions and granted judgment for both Franco and Mendez for $68,250.00 each, plus attorney's fees, and ordered Franco reinstated to her position at Southwestern Bell.

By its first point of error, Southwestern Bell challenges the legal and factual sufficiency of the evidence to support the jury's finding on intentional infliction of emotional

distress. Specifically, Southwestern Bell contends that wrongful termination alone does not satisfy the elements of the tort.

The elements of intentional infliction of emotional distress are: (1) the defendant acted intentionally or recklessly, (2) the conduct was extreme and outrageous, (3) the defendant's actions caused the plaintiff emotional distress, and (4) the emotional distress suffered by the plaintiff was severe. *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex.1993). Liability for outrageous conduct should be found " 'only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.' " *Id.* at 621. Moreover, it is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery. *Wornick Co. v. Casas*, 856 S.W.2d 732, 734 (Tex.1993) (quoting Restatement (Second) of Torts § 46 cmt. h (1965)).

Within the context of termination of employment, the Texas Supreme Court has generally distinguished between the act of termination itself, and the circumstances under which such termination was carried out. *Wornick*, 856 S.W.2d at 735. Accordingly, the termination of an at-will employee under conditions that do not raise an exception to the employment-at-will doctrine cannot, as a matter of law, constitute outrageous behavior. *Wornick*, 856 S.W.2d at 735.

Courts of appeals have followed the rationale of *Wornick*, such that they will not consider the termination itself in determining whether a defendant's conduct is extreme and outrageous, even if the termination was wrongful or in violation of a statute. *Sebesta v. Kent Electronics Corp.*, 886 S.W.2d 459, 463–64 (Tex.App.—Houston [1st Dist.] 1994, writ denied) (termination in violation of the Juror Reemployment Act); *Shaheen v. Motion Industries, Inc.*, 880 S.W.2d 88, 92 (Tex. App.—Corpus Christi 1994, writ denied) (alleged oral employment contract). Under this interpretation of *Wornick*, the court looks strictly to the evidence of the employer's conduct independent of the act of termination itself. *Sebesta*, 886 S.W.2d at 464. The employee may recover only if the *manner* of discharge is outrageous. *Wornick*, 856 S.W.2d at 735; *Shaheen*, 880 S.W.2d at 92.

However, one case cited by the majority, *Higginbotham v. Allwaste, Inc.*, 889 S.W.2d 411 (Tex.App.—Houston [14th Dist.] 1994, writ denied), suggests that termination alone may be sufficiently outrageous when the employee is fired specifically for refusing to participate in an illegal activity. The court of appeals in *Higginbotham* reasoned that disallowing the cause of action would reward those who engage in illegal activity and punish those who do not, and that this is sufficiently intolerable in a civilized community to be considered outrageous conduct on the part of the employer. *Id.* at 416–17.

In the present case, Franco and Mendez were terminated for complaining about prior incidents of sexual harassment. There is no question that this was an improper reason for firing them, and that they had recourse to a statutory cause of action for retaliatory discharge as a form of prohibited discrimination under the Texas Commission on Human Rights Act.[1] However, I agree with the reasoning of *Sebesta*, that the mere act of terminating an at-will employee, even for an illegal reason, is not itself sufficiently outrageous conduct to raise a cause of action for intentional infliction of emotional distress. Nor is there any indication here that Southwestern Bell attempted to coerce Franco and Mendez themselves to break the law or be terminated. Accordingly, the concerns mentioned in *Higginbotham* are not present here.

However, whether or not the termination itself is legal, it may be accompanied by outrageous behavior in the manner in which it is carried out. *See Wornick*, 856 S.W.2d at 735; *Diamond Shamrock Refining and Marketing Co. v. Mendez*, 844 S.W.2d 198, 202 (Tex.1992). Nevertheless, the threshold requirements for "outrageous behavior" are high enough to exclude petty bickering, insults, indignities, lying and other such conduct that may tend to anger or even humili-

1. Franco and Mendez did not submit mental anguish as an element of damages in relation to their statutory claim, although it appears that, at least under the present act, they would be entitled to such damages. *See* Tex. Labor Code Ann. § 21.2585(d) (Vernon 1996).

ate the employee. *See Wornick*, 856 S.W.2d at 735; *Miller v. Galveston/Houston Diocese*, 911 S.W.2d 897, 900–01 (Tex.App.—Amarillo 1995, no writ). Even the employer's act of falsely depicting the employee as a thief, as the reason for his or her termination, is not by itself sufficiently outrageous to support a claim for intentional infliction of emotional distress. *Diamond Shamrock*, 844 S.W.2d at 202; *Hanssen v. Our Redeemer Lutheran Church*, 938 S.W.2d 85, 94 (Tex.App.—Dallas 1996, writ denied). The employer's accusations of theft have only been held to be sufficiently outrageous when accompanied by such conduct as actively framing the employee by placing company checks in her purse. *See Dean v. Ford Motor Credit Co.*, 885 F.2d 300, 307 (5th Cir.1989).

In the present case, the alleged scheme to terminate Franco and Mendez did not involve any intrusion into their personal belongings or the planting of evidence therein. According to their testimony, they were each privately informed of their termination and the reason therefor by Villarreal, although they did then awkwardly have to clean out their belongings and leave the premises in view of other employees. I find nothing else to show that the manner of terminating Franco and Mendez was extreme or outrageous in any way.

I would hold that there is no evidence to support Franco and Mendez's claims for intentional infliction of emotional distress and would sustain Southwestern Bell's first point of error.

Accordingly, I would reverse the judgment of the trial court on plaintiffs' claims for intentional infliction of emotional distress, attorney's fees, and punitive damages,[2] and render judgment that they take nothing thereon.

DORSEY, J., joins in this dissent.

---

**2.** At the time that Franco and Mendez were fired in 1990, punitive damages were not available for the statutory cause of action for retaliatory discharge under the Commission on Human Rights Act absent a finding of an independent tort with accompanying actual damages. *See Federal Exp.* *Corp. v. Dutschmann*, 846 S.W.2d 282, 284 (Tex. 1993); Tex.Rev.Civ. Stat. Ann. art. 5221k § 7.01 (amended to include punitive damages in 1993, at 73rd Leg. R.S. chp. 276 § 7; recodified into the Texas Labor Code in 1995, at 74th Leg., chp. 76 § 9.07(d).).