NO. 07-04-0565-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL D



JUNE 2, 2006


______________________________



CLOVIS CORPORATION d/b/a LLANO


PERMIAN ENVIRONMENTAL, 



 Appellant

v.



LUBBOCK NATIONAL BANK and


DIVERSIFIED LENDERS, INC., 



 Appellees

_________________________________



FROM THE 237TH DISTRICT COURT OF LUBBOCK COUNTY;



NO. 2003-522,192; HON. SAM MEDINA, PRESIDING


_______________________________



Opinion


_______________________________



Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

 Clovis Corporation d/b/a Llano Permian Environmental (Llano) appeals from a final
summary judgment denying it recovery against Lubbock National Bank (the Bank) and
Diversified Lenders, Inc. (Diversified). In turn, the Bank and Diversified appeal from an
order denying them attorney's fees. According to the record, Llano sued the Bank and
Diversified for breach of contract, tortious interference with contract, breach of fiduciary
duty, and fraudulent inducement. The claims arose from a factor transaction. That is,
Diversified agreed to buy and Llano agreed to sell various accounts receivable. To
effectuate that purpose, the two executed a document entitled "Security and Factoring
Agreement." Shortly after the document was executed, Diversified assigned its interest in
the contract to the Bank. The dispute before us concerned the Bank's decision to increase
the amount of reserve it retained under the contract from 12.75% to 17.75%. In so raising
the reserve, the Bank and/or Diversified allegedly breached the agreement, engaged in
tortious interference with contract, breached various fiduciary duties owed Llano and
committed fraud. After being sued, both the Bank and Diversified filed traditional and no
evidence motions for summary judgment. So too did they request attorney's fees and court
costs. Though the summary judgment motions were granted, those seeking fees and costs
were denied. 

 Through four issues, Llano contends that 1) the trial court erred in granting the
motions for summary judgment, 2) a fact issue exists concerning whether the Bank and
Diversified acted in bad faith, 3) the Bank and Diversified were not entitled to enforce the
contract's early termination penalty provisions due to their bad faith, and 4) the Bank and
Diversified may not invoke the contract to bar prosecution of its fraudulent inducement
claim. The Bank and Diversified posit that the trial court should have awarded them fees
and costs. We affirm the judgment in part and reverse and remand it in part.

 Llano Issue Two - Some Evidence of Bad Faith

 We initially address issue two because Llano's remaining issues are dependent
upon its successful disposition. Through it, Llano alleges that there existed some evidence
of material fact sufficient to deny the Bank and Diversified judgment as a matter of law. 
The evidence purportedly illustrated that Llano's opponents acted in bad faith when raising
the reserve from 12.75% to 17.75%. And, this evidence was of import because they had
an implied obligation to act in good faith when modifying the reserve. We overrule the
issue.

 According to paragraph 18 of the contract, the factor (Diversified or the Bank) 

 may reserve and withhold an amount in a reserve account equal to twelve
and three quarters percent (12 3/4%) of the gross face amount of all
accounts purchased. Said reserve account may be held by FACTOR and
applied by FACTOR against charge-backs or any obligations of [Llano], and
said reserve account is not due and payable . . . until any and all potential
obligations owing by and satisfied [sic]. [Llano] gives to FACTOR a security
interest in this reserve account, which secures all obligations and
indebtedness arising under this factoring agreement. 


In paragraph 48, the parties also agreed that


 . . . between [Llano] and FACTOR . . . FACTOR will fund eighty-seven and
one quarter percent (87 1/4%) of the face value of each invoice [and] . . . [a]t
the time of purchase FACTOR will deduct the initial factoring fee/discount
and the reserve as stated in Section 16 & 18 of the Security Agreement. 
Additional fees/discounts will be taken by FACTOR from the reserve as
described in Provision 48(B). Additional reserve may be taken when deemed
necessary by FACTOR.


(Emphasis added). It is the italicized verbiage in paragraph 48 that is pivotal here. While
it permitted the factor to increase the percentage of reserve, Llano reads into it an implied
term obligating the factor to act in good faith. That is, it believes that the factor could not
raise the rate unless it did so in good faith. That Llano attempts to imply this restriction into
the agreement is beyond dispute for it appears nowhere in the written document. Yet, our
Supreme Court cautioned against implying terms into contracts. Universal Health Serv.,
Inc. v. Renaissance Women's Group, P.A., 121 S.W.3d 742, 747 (Tex. 2003) (stating that
in "rare circumstances, . . . a court may imply a covenant in order to reflect the parties' real
intentions" but "courts must be quite cautious in exercising this power"). Indeed, a term
"will not be implied simply to make a contract fair, wise, or just." Id. at 748. Rather, they
can be declared to exist "'only when there is a satisfactory basis in the express contract[]
. . . which makes it necessary to imply duties and obligations . . . to effect the purposes of
the parties in the contract[ ] made.'" Id. at 747-48, quoting Freeport Sulphur Co. v.
American Sulphur Royalty Co., 117 Tex. 439, 6 S.W.2d 1039 (1928); accord Snyder v.
Eanes Indep. Sch. Dist., 860 S.W.2d 692, 697 (Tex. App.-Austin 1993, writ denied) (stating
that implied covenants are permitted only on the grounds of necessity). As can be seen,
necessity is the triggering agent, and that agent does not exist if the subject encompassed
by the supposed implied term is already within the scope of an express term. So, where
there already exists an express term covering a particular subject, no implied term can exist
encompassing the same subject. Freeport Sulphur Co. v. American Sulphur Royalty Co.,
6 S.W.2d at 1043; Snyder v. Eanes Indep. Sch. Dist., 860 S.W.2d at 697. And, there lies
the deficiency in Llano's contention.

 Nothing was said about acting in good faith when the parties to the agreement
before us addressed the topic of increasing the reserve. Rather, they expressly agreed
that the reserve could be raised when "deemed necessary by [the] FACTOR." Necessity
being the expressed triggering factor, good faith cannot be substituted in its stead. In other
words, since there already existed an express provision encompassing when and how the
reserve could be modified, neither we nor Llano may imply a covenant involving the same
topic. So, we reject the invitation to burden, through implying omitted terms, the factor's
right to alter the reserve since the parties had expressly acknowledged the factor's authority
to act when it deemed the action necessary.

 Next, in urging its point on appeal, Llano focused upon evidence of its opponents'
lack of good faith. No effort went into explaining why the increase was not "necessary"
from the viewpoint of either Diversified or the Bank. Given this, the fact that Llano's
appellate issue lives or dies on our imposition of an implied term of good faith, and our
refusal to read such a requirement into paragraph 48, we hold that the trial court did not err
in awarding Diversified and the Bank summary judgment as a matter of law. 

 Llano's Remaining Issues

 As previously alluded to, the viability of Llano's remaining issues are dependent
upon its success on issue two. Having overruled issue two, we overrule issues one, three
and four as well.

 Issue One of Diversified and the Bank

 Through this issue, Diversified and the Bank allege that the trial court erred in
denying them attorney's fees. This is so because they were contractually entitled to such
fees as prevailing parties. We overrule the contention. 

 Via paragraph 34 of the agreement, the signatories provided that the "losing party
will pay any and all legal expenses and reasonable attorney's fees that the prevailing party
may incur as a result of either CLIENT or FACTOR enforcing this Agreement one against
the other." As can be seen, this provision entitles a prevailing party to attorney's fees. Yet,
it also requires that the fees be "reasonable." And, assuming arguendo, that Diversified
and the Bank were prevailing parties, we have been cited to (and found) no evidence
illustrating that the $35,860.55 in fees incurred were reasonable. No affidavit purporting
to supply the requisite information accompanied their request. Nor did the unsworn
statement appearing in the motion regarding the reasonableness of the fees suffice
because unsworn statements in pleadings, as well as motions, are not evidence. In re
J.N.F., 116 S.W.3d 426, 436 (Tex. App.-Houston [14th Dist.] 2003, no pet.). (1) 
Consequently, we hold that the trial court did not err in denying the motion for attorney's
fees.

 Issue Two - Costs

 In their last issue, Diversified and the Bank claim that the trial court erred in failing
to award them court costs. We sustain the contention.

 Rule 131 provides that "[t]he successful party to a suit shall recover of his adversary
all costs incurred therein . . . ." However, a trial court may assess costs differently for good
cause. Tex. R. Civ. P. 141; Furr's Supermarkets, Inc. v. Bethune, 53 S.W.3d 375, 376 (Tex.
2001). And, if it opts to assess them differently, then it must memorialize on the record the
purported good cause allowing it to do so; otherwise, it abuses its discretion. Marion v.
Davis, 106 S.W.3d 860, 869 (Tex. App.-Dallas 2003, pet. denied). Finally, these rules
apply to summary judgment proceedings. Texas River Barges v. City of San Antonio, 21
S.W.3d 347, 358 (Tex. App.-San Antonio 2000, pet. denied). 

 Here, it cannot be denied that Diversified and the Bank were the successful parties
in the suit. Thus, they were entitled to their court costs unless the trial court found good
cause to deny them same. While the trial court denied their request, it provided no reasons
to justify its decision. Thus, it abused its discretion. 

 In summary, we affirm the take-nothing summary judgment and order denying
Diversified and the Bank attorney's fees. We reverse the order denying those two parties
their court costs and remand that issue for further proceedings.


 Brian Quinn 

 Chief Justice 
1. Reference by Diversified and the Bank to §38.004 of the Texas Civil Practice and Remedies Code
and Budd v. Gay, 846 S.W.2d 521 (Tex. App.-Houston [14th Dist.] 1993, no writ) is unavailing. Those
authorities concern effort to recover fees incurred while prosecuting the type of claims itemized in §38.001 of
the Civil Practice and Remedies Code. Yet, neither Diversified nor the Bank argue that their defense against
the claims of Llano fell within any of the categories specified in §38.001. Nor do we find that they do. 
Consequently, neither §38.004 nor Budd applies. Coward v. Gateway Nat. Bank, 525 S.W.2d 857, 858-59
(Tex. 1975) (holding that the predecessor of §38.001 et seq. applied solely to claims mentioned in the statute);
Southwest Bell Mobile Sys., Inc. v. Franco, 951 S.W.2d 218, 226 (Tex. App.-Corpus Christi 1997), rev'd on
other grounds, 971 S.W.2d 52 (Tex. 1998) (holding that §38.001 et seq. applies only to the attempt to recover
upon the claims itemized in §38.001).



d to be with
Barron "[s]omeday . . . after everything died down"; (13) she knew
Barron "was going to take a shot at" Bill; and (14) she "guess[ed]"
she wanted Bill dead. Under these circumstances, Barron's
testimony was sufficiently corroborated by non-accomplice evidence
connecting appellant as a party with the murder of the deceased. 
Point of error four is overruled. 


 In point of error five, appellant contends the trial court
erred in denying admission of a statement made by Gerringer to
Gwenna during Gerringer's interview with Gwenna about the
deceased's death. We disagree.

 During cross-examination, appellant asked Gwenna about her
interview with Gerringer regarding the murder. In this regard, the
record shows:

 Q. [BY DEFENSE COUNSEL]: So when you walked
in . . . Gerringer's office, what happened? What
transpired?


 A. Well, I told him that I didn't believe [Barron]
had done it.


 Q. Did [Gerringer] get mad at you?


 A. [Gerringer] told me in a very harsh voice that
he had been an investigator for over 25 years and that he
had no doubt that [Barron] was guilty.


 Q. Did he start talking to you -- Did he say that
he had been told by a lot of people that you hated your
father [the deceased]?


 A. Yes.


 Q. Did he say that you knew [Barron] was going to
kill your father?


 [THE PROSECUTOR]: Your Honor --


 A. Yes.


 [THE PROSECUTOR]: -- I am going to object
to that as hearsay.


 THE COURT: Sustained.

 Subsequently, appellant made the following offer of proof
regarding Gwenna's testimony: 

 Q. [BY DEFENSE COUNSEL]: Okay. In any event,
[Gwenna] you had a conversation with . . . Gerringer,
right?


 A. Yes, I did.


 Q. Did he accuse you of participating in your
father's death?


 A. [Gerringer] informed me that he knew I knew
about it.


 Q. And did [Gerringer] say that you knew [Barron]
was going to kill your daddy?


 A. Exactly.


 Q. Did [Gerringer] say that he had been told by a
lot of people that you hated your father?


 A. Yes, he did.


 Q. Did [Gerringer] essentially try to say that you
were a guilty party?


 A. Yes, he did.


 Q. Now, was there a tape recording going when this
occurred?


 A. Not that I knew of.


 [DEFENSE COUNSEL]: Your Honor, that is
all that we have.

 Where the trial court excludes testimony sought to be admitted
by the defense and admits essentially the same evidence elsewhere,
the error is cured even if the exclusion was error. Gonzales v.
State, 571 S.W.2d 11, 13 (Tex.Cr.App. 1978). Here, the trial court
sustained the State's hearsay objection to the question about
whether Gerringer accused Gwenna of knowing that Barron was going
to kill the deceased. However, Gwenna answered the question
affirmatively before the objection was sustained, and there was no
instruction to disregard or strike the statement from the record. 
Hence, (1) the evidence underlying appellant's offer of proof was
actually already admitted before the jury prior to the trial
court's ruling, and (2) the jury could have properly considered the
unstricken testimony. Hence, the admission of essentially the same
evidence cured any error.

 For the first time on appeal, appellant contends that Rule
801(e)(2)(D) provides the basis for admission of Gwenna's excluded
testimony about Gerringer's statements. However, we find the error
was harmless beyond a reasonable doubt because (1) Gwenna's
testimony on the issue was tenuous as to Gerringer's bias or
appellant's guilt, (2) cumulative of other testimony already given
by her, (3) the examination of Gwenna and Barron by the defense was
relatively unrestricted, and (4) appellant tacitly admitted to
guilt in her tape recorded confession. Tex. R. App. P. 81(b)(2);
Shelby v. State, 819 S.W.2d 544, 546-47 (Tex.Cr.App. 1991).

 Appellant also objects for the first time on appeal that the
exclusion of the evidence deprived her of her rights to a fair
trial under the 5th, 6th, and 14th Amendments to the United States
Constitution and Article I, sections 10 and 19 of the Texas
Constitution. Since these objections are raised for the first time
on appeal, nothing is preserved for review. Gauldin v. State, 683
S.W.2d at 413. Consequently, point of error five is overruled.

 By her third and sixth points of error, the appellant
challenges the trial court's admission of a tape recording of an
oral confession and interview with Officer Gerringer. First, we
will address the sixth point by which she asserts the trial court
erred by admitting her tape recorded oral interview with Gerringer
claiming her confession was involuntary. 

 The determination of whether an accused knowingly and
voluntarily waived his rights is based on the totality of the
circumstances surrounding the statement's execution. Ingham v.
State, 679 S.W.2d 503, 509 (Tex.Cr.App. 1984). In order for a
promise to render a confession involuntary, the promise must be
shown to be: (1) of some benefit to appellant, (2) positive, (3)
made or authorized by one in authority, and (4) of such a nature as
would be likely to influence the confessing party to report
untruthful facts. Sossamon v. State, 816 S.W.2d 340, 345-46
(Tex.Cr.App. 1991). To establish the forth prong, the reviewing
court must look to whether the promise induced the accused to admit
to a crime that was not actually committed by the individual. Id. 
 In this regard, we review some analogous cases. The following
are promises not likely to induce a defendant to speak
untruthfully: (1) a statement by an officer that certain
individuals would not be arrested if they were not involved in the
burglary or murder was not a promise likely to cause the defendant
to untruthfully admit to a murder offense, Salazar v. State, 687
S.W.2d 502, 503-04 (Tex.App.--Dallas 1985, pet'n ref'd); (2)
statements from the prosecutor (a) asking the defendant to give his
version so things could be straightened out, and (b) telling the
defendant that he could probably go home thereafter, was not an
incentive for the defendant to untruthfully confess to murder,
Alvarez v. State, 649 S.W.2d 613, 620-21 (Tex.Cr.App. 1982), cert.
denied, 464 US 849, 104 S.Ct. 156, 78 L.Ed.2d 144 (1983); (3)
unspecific offers to help a defendant are not likely to cause the
suspect to make an untruthful statement, Dykes v. State, 657 S.W.2d
796, 797 (Tex.Cr.App. 1983); (4) offer to help wife and mother of
defendant with charitable aid was not sufficient to induce suspect
to confess to heinous crime, accord Muniz v. State, 851 S.W.2d 238,
253-54 (Tex.Cr.App.), cert. denied, 114 S.Ct. 116, 126 L.Ed.2d 82
(1993); and (5) a promise to the defendant that he would be allowed
to see his girlfriend was not likely to induce an untruthful
statement on his part. Smith v. State, 779 S.W.2d 417, 427
(Tex.Cr.App. 1989). 


 Here, appellant acknowledged on the tape recording that she
knew and understood her statutory warnings. Gerringer advised
appellant that she would not be arrested the day she talked to him. 
When appellant specifically asked if she would be arrested that
night or the next day, Gerringer informed appellant that she would
not necessarily be arrested but it depended on what she told him
after she had received the warnings about her rights. Gerringer
promised appellant that she would not be arrested that day. 
However, Gerringer also explained that any arrest would depend on
the information that she gave to him afterwards. Gerringer
explained that the prosecutor would make a decision regarding
whether she had some culpability in Bill's murder. Under the
totality of these circumstances, the promise not to arrest
appellant the day of her interview did not likely induce appellant
to speak untruthfully and tacitly admit to aiding Barron in
murdering Bill. Point of error six is overruled. 

 In point of error three, appellant contends the trial court
erred in admitting a tape recording of her oral confession when
there was no proper predicate for its admission. We disagree. 


 Gerringer interviewed appellant in his office on September 30,
1993. Gerringer said that appellant was a witness to the instant
offense, came into his office voluntarily, and initially discussed
the circumstances surrounding her husband's murder freely. When
appellant made an incriminating statement during the interview,
Gerringer stopped the interview and gave appellant verbal warnings
and had her sign a written waiver of her rights. Appellant never
signed a written confession.

 Gerringer initially attempted to record the interview with
appellant by using a recorder capable of recording from a standard
sized cassette tape. After the first fifteen to twenty minutes of
the interview elapsed, Gerringer noticed that the recorder was not
recording the interview with appellant. Gerringer then switched to
a micro-cassette tape recorder and recorded the remainder of the
interview. The micro-cassette tape contained about an hour and
forty-five minutes of his interview with appellant. 


 Gerringer acknowledged that (1) he was competent to record the
conversation and operate the micro-cassette recorder, (2) he had
subsequently listened to the tape and was certain that the taped
confession was accurate, (3) he had the taped conversation
transcribed, (4) the transcription was an accurate reflection of
the interview with appellant, (5) there had been no alterations or
changes to the tape, (6) the tape was maintained in the District
Attorney's offices since appellant's interview, and (7) no one
tampered with the tape. Gerringer identified his and appellant's
voices as those on the tape.

 Appellant objected because the tape had about a twenty minute
gap since the first recorder did not function properly, and
Gerringer "could" have made an offer of immunity during this gap. 
Soon thereafter, the trial court admitted the tape's transcription
into evidence.


 Rule 901(a) provides that when identification or
authentication of evidence is necessary, the requirement for
admissibility is met by evidence adequate to support a finding that
the matter is what its proponent claims. Kephart v. State, 875
S.W.2d 319, 321 (Tex.Cr.App. 1994). The adoption of the Rule
901(a) superseded the seven prong test for the admissibility of
sound recordings set forth in Edwards v. State, 551 S.W.2d 731, 733
(Tex.Cr.App. 1977). Leos v. State, 883 S.W.2d 209, 211
(Tex.Cr.App. 1994).


 Here, Gerringer identified his and appellant's voices on the
tape recording and said the recording was an accurate recording of
their conversation. Under these circumstances, there was evidence
that the challenged transcription was what the State claimed, and
the transcription was relevant in that appellant's statements
connected her to the offense. Additionally, minor gaps in audio
recordings that are a result of accidental or technical problems
that are sufficiently explained do not affect the trustworthiness
and reliability of the evidence, nor render the tapes inadmissible. 
Ali v. State, 742 S.W.2d 749, 754-55 (Tex.App.--Dallas 1987, pet.
ref'd)(electrical short causing recorder to "short out" did not
render tape inadmissible); Gahl v. State, 721 S.W.2d 888, 896-97
(Tex.App.--Dallas 1986, pet. ref'd) (a jammed tape resulting in
three to five minute gap did not render recording inadmissible);
McEntyre v. State, 717 S.W.2d 140, 145-47 (Tex.App.--Houston [1st
Dist.] 1986, pet. ref'd) (frequent interference caused by
interruption from police radios and a seven minute gap in the tape
recording did not render recording inadmissible). 


 On appeal, appellant also contends that (1) since the first
device quit working, it was not capable of making a recording, (2)
Gerringer failed to notice that the device was not working so he
was incompetent to operate the equipment, and (3) her statement was
induced by Gerringer's promise not to arrest her. With regard to
the first two contentions, nothing is preserved for review since
these appellate contentions do not comport with the objection made
at trial, Cravens v. State, 687 S.W.2d at 752, and these appellate
objections are raised for the first time on appeal. Gauldin v.
State, 683 S.W.2d at 413. With regard to the third claim, we have
previously determined in our resolution of point of error six, that
the confession was not involuntary because the promise made by
Gerringer that appellant would not be arrested on the day of her
interview was not likely to induce appellant into making an
untruthful statement tacitly admitting involvement in Bill's death. 
Consequently, point of error three is overruled. 


 In point of error one, appellant contends the trial court
erred in adding an affirmative finding to the judgment that she
used a deadly weapon during the commission of the offense. We
disagree.


 If a party attempts to invite the court to make an erroneous
ruling, and the court rules in accord with the request, the accused
cannot complain of that error on appeal. Tucker v. State, 771
S.W.2d 523, 534 (Tex.Cr.App. 1988); Capistran v. State, 759 S.W.2d
121, 124 (Tex.Cr.App. 1982). The correct time to submit a special
issue concerning the use of a deadly weapon is at the punishment
stage of trial. Luken v. State, 780 S.W.2d 264, 268-69
(Tex.Cr.App. 1989).

 Here, the punishment charge did not include a deadly weapon
special issue. Appellant expressly stated that she had no
objections to the jury charge. Soon thereafter, the prosecutor
stated that it was his understanding that if the jury found
appellant guilty as charged in the indictment, the trial judge was
authorized to find that a deadly weapon was used in the instant
offense. Defense counsel agreed with the prosecutor's expression
of the law. The trial judge then declared that he would make the
deadly weapon finding. Because appellant complains of error she
invited the trial court to make, nothing is preserved for review. 
Consequently, point of error one is overruled. 


 Accordingly, the judgment is affirmed.


 Carlton B. Dodson

 Justice

Do not publish. Tex. R. App. P. 90(c).
1. All references to the Rules are the Texas Rules of Criminal
Evidence.